NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NAT'L SEC. SYS., INC., et al., | : |
| Plaintiffs, | : |
| v. | Civil No. 00-6293 (AET) |
| ROBERT L. IOLA, JR., et al., | **MEMORANDUM & ORDER** |
| Defendants. | : |

THOMPSON, U.S.D.J.

This matter comes before the Court upon Defendant James W. Barrett's motion for partial summary judgment [docket no. 214]. The Court has decided this motion after reviewing the submissions of the parties and without oral argument, pursuant to Fed. R. Civ. P. 78. For the following reasons, the motion is granted in part and denied in part.

### BACKGROUND

This employee benefit welfare plan matter involves many parties and multiple claims. Several motions and cross-motions for summary judgment, as well as motions and cross-motions for sanctions, are now pending before this Court.[1] The Court will consider Barrett's motion first

---

[1] The pending motions are as follows: (1) Defendant Lincoln National Life Insurance Company's ("Cigna/Lincoln") motion for partial summary judgment [docket no. 211]; (2) Defendant Robert L. Iola, Jr.'s motion for partial summary judgment [docket no. 213]; (3) Defendant Barrett's motion for partial summary judgment [docket no. 214]; (4) Defendants Commonwealth Life Insurance Company, Monumental Life Insurance Company, and Peoples Security Life Insurance Company's ("the Monumental Defendants") motion for summary judgment [docket no. 215]; (5) Defendants Raymond J. Ankner, Beaven Companies, Inc., and CJA Associates, Inc.'s ("the CJA Defendants") motion for summary judgment [docket no. 216]; (6) Plaintiffs' motion for partial summary judgment against Defendants Barrett, Iola, and Cigna/Lincoln [docket no. 217]; (7) Defendant Cigna/Lincoln's cross-motion for partial summary judgment [docket no. 246]; (8) Plaintiffs' motion for partial summary judgment against

-1-

as it addresses many issues that pertain to the other parties' motions. The Court will then address the other motions in turn. As the parties are intimately familiar with the facts and procedural history of this case, the Court will not repeat them in detail. Instead, the Court incorporates by reference the facts of this case as detailed in its previous Orders, entered July 2, 2001, and May 22, 2003. In simple terms, Plaintiffs[2] allege that Defendants induced them to participate in and contribute to a purported multiple employer welfare plan known as the Employers Participating Insurance Cooperative or "EPIC" plan. The EPIC plan was subsequently challenged by the Internal Revenue Service ("IRS") and was disqualified for favorable tax treatment, resulting in the loss of benefits and adverse tax consequences. Specifically, the IRS concluded that the plan was not an employee benefit plan, but a method to defer compensation. Plaintiffs allege several causes of action arising from Defendants' alleged inducement, alleged misrepresentations about the existence of a "reserve fund," and allegedly excessive commissions.

## STANDARD OF REVIEW

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56;

---

Defendants Barrett and Papetti as to Count I of the Complaint [docket no. 218]; (9) Plaintiffs' motion for sanctions against Defendants Barrett, Papetti, and Cigna/Lincoln [docket no. 226]; (0) Defendant Cigna/Lincoln's cross-motion for attorney's fees [docket no. 236]; and (11) Defendant Barrett's motion for sanctions against Plaintiffs [docket no. 232]. The Court previously granted in part and denied in part Defendant Papetti and U.S. Financial Services Corp.'s ("Papetti/USF") motion for summary judgment [docket no. 206] in an Order entered on June 29, 2007.

[2]   Plaintiffs National Security Systems, Inc. and Steven Capello are referred to as "the National Security Plaintiffs." Plaintiffs Universal Mailing Service, Inc., Michael A. Maroney, Sr., and Michael Maroney, Jr. are referred to as "the Universal Plaintiffs." Plaintiffs Lima Plastics, Inc., Joseph M. Caria, and Margit Gyantor are referred to as "the Lima Plaintiffs." Plaintiffs Finderne Management Co., Inc., Rocque Dameo, and Daniel Dameo are referred to as "the Finderne Plaintiffs." Plaintiffs Alloy Cast Products, Inc., Kenneth Fisher, and Frank Panico are referred to as "the Alloy Cast Plaintiffs." The Finderne Plaintiffs' state court action and the Alloy Cast Plaintiffs' state court action are referred to, respectively, as "the <u>Finderne</u> action," and "the <u>Alloy Cast</u> action."

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 414 (3d Cir. 1999). The moving party may cite to the pleadings, depositions, answers to interrogatories, or admissions on file, to demonstrate that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To survive a motion for summary judgment, the nonmoving party cannot rely merely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "[L]egal conclusions, unsupported by documentation of specific facts, are insufficient to create issues of material fact that would preclude summary judgment." Jersey Cent. Power & Light Co. v. Twp. of Lacey, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

## DISCUSSION

A.  The Finderne Plaintiffs' Claims

Initially, Barrett argues that all claims against him by the Finderne Plaintiffs are barred because of the Finderne action in state court. The Finderne Plaintiffs agree that all of the claims they asserted or could have asserted in the Finderne action should be dismissed, except for their ERISA claim. For the same reasons as in this Court's Order entered June 29, 2007, granting and denying in part Papetti/USF's motion for summary judgment, the Court will grant Barrett's motion as to any claims against him by the Finderne Plaintiffs other than their ERISA claim.

B.  Count I—ERISA

In Count I, all Plaintiffs except the National Security Plaintiffs assert breach of fiduciary duty claims under §§ 502(a)(2) and (3) of the Employee Retirement and Security Act ("ERISA"),

29 U.S.C. §§ 1132(a)(2) and (3), against the Tri-Core Defendants, Barrett, Papetti, Iola, and Cigna/Lincoln.  Plaintiffs admit that Barrett, Papetti, and Iola were not ERISA fiduciaries, but assert that they are still liable for assisting Tri-Core in its fiduciary breach, pursuant to Harris Trust & Savings Bank v. Solomon Smith Barney, Inc., 530 U.S. 238 (2000).  Barrett argues that the ERISA claims fail for a number of reasons.

    1.        Liability of Nonfiduciaries Under ERISA

Barrett argues that he cannot be liable under ERISA as a nonfiduciary because he was not an ERISA "party in interest" and did not participate in a prohibited transaction.  Plaintiffs assert nonfiduciary liability under Harris Trust.  530 U.S. at 241 (holding that a nonfiduciary "party in interest" may be sued under § 502(a)(3) for engaging, with an ERISA plan, in a transaction barred by § 406(a), and not exempted by § 408).  In Harris Trust, however, the Supreme Court assumed that the broker-dealer defendant was a "party in interest," because it had provided services to the plan.  Id. at 242 (citing 29 U.S.C. § 1002(14)(B)).  The Court also assumed that the plan and the defendant had engaged in a transaction prohibited by § 406(a) when the plan's investment manager (and thus, a fiduciary) directed the plan to buy from the defendant interests in several motel properties that turned out to be worthless.  Id. at 243.  Harris explained the broad reach of § 503(a)(3), stating that "§ 502(a)(3) admits of no limit . . . on the universe of possible defendants . . . . [D]efendant status under § 502(a)(3) may arise from duties imposed by § 502(a)(3) itself, and hence does not turn on whether the defendant is expressly subject to a duty under one of ERISA's substantive provisions."  Id. at 247.

Thus, it seems that liability of a nonfiduciary under Harris "does not depend upon whether the nonfiduciary can be classified as a party in interest" or upon "whether the nonfiduciary participated in a prohibited transaction."  Chao v. Johnston, No. 06-226, 2007 U.S. Dist. LEXIS

49921, at *22 (E.D. Tenn. July 9, 2007); see also Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough, 354 F.3d 348, 353 (5th Cir. 2003) (holding that the nonfiduciary defendant did not have to be a "party in interest" to be subject to liability pursuant to Harris Trust); Daniels v. Bursey, 313 F. Supp. 2d 790, 808 (N.D. Ill. 2004) (same).[3] The relevant inquiry is whether Plaintiffs have submitted sufficient evidence that Barrett, along with Papetti, Iola, and Cigna/Lincoln, "knowingly participated" in Tri-Core's breach of fiduciary duty. Harris Trust, 530 U.S. at 248. Thus, Barrett's argument of no liability because he was not a party in interest participating in a prohibited transaction is unavailing.

2. Standing and Appropriate Equitable Relief

Barrett next argues that the individual employee-participant Plaintiffs do not have standing under § 502(a)(2) because that section requires that any claim be asserted on behalf of the entire plan. (Def. Barrett's Br. [214] at 15.) As explained above, however, Plaintiffs' claims against Barrett, along with Papetti, Iola, and Cigna/Lincoln are premised upon § 502(a)(3), imposing liability on nonfiduciaries who knowingly participate in a fiduciary's breach. Under § 502(a)(3), a participant may obtain "appropriate equitable relief" to redress violations of ERISA. 29 U.S.C. § 1132(a)(3). Thus, Plaintiffs have standing for their ERISA claims against Barrett.

Barrett also argues that Plaintiffs seek money damages in the form of either benefit-of-the-bargain damages, or the return of the allegedly excessive commissions, which are not "appropriate equitable relief" under § 502(a)(3). For the reasons explained in the Court's Order

---

[3] The Court acknowledges that a district court in the Eastern District of Pennsylvania came to the opposite conclusion. Pa. Fed'n, Bhd. of Maint. of Way Employees v. Norfolk S. Corp. Thoroughbred Ret. Inv. Plan, No. 02-9049, 2004 U.S. Dist. LEXIS 1987, at *26 (E.D. Pa. Feb. 4, 2004) (finding that Harris Trust turned on the involvement of a party in interest in a prohibited transaction). Finding no controlling precedent from the Court of Appeals for the Third Circuit, however, Pa. Fed'n does not bind this Court, and the Court is persuaded by the reasoning and analysis by the Fifth Circuit and cases in accord.

granting and denying in part the Monumental Defendants' and the CJA Defendants' motions for summary judgment [docket nos. 215 and 216],[4] the Court agrees with Barrett as to the former, and will dismiss Plaintiffs' claim for benefit-of-the-bargain damages. As to the latter, Barrett asserts that Plaintiffs had no legal right or title to the allegedly excessive commissions because they represented his fair compensation, and thus, they are not subject to equitable restitution or imposition of a constructive trust, as available under § 502(a)(3). Plaintiffs, however, seek to recover contributions allegedly made to what they were told was a "reserve fund," controlled by Tri-Core, and wrongfully misappropriated by Tri-Core and diverted to itself, Barrett, Papetti, and Iola in the form of "commissions." (See Maroney Cert. ¶¶ 7, 9, Gyantar Cert. ¶ 10 and Ex. D, Cappello Cert. ¶ 9, Fisher Cert. ¶ 7, all Supp. Pls.' Mots. for Partial Summ. J. [217], [218]; see also Fram Cert. Supp. Pls.' Mots. [217], [218] Ex. E.) Such relief is permissible and appropriate equitable relief under § 502(3)(a). See Harris Trust, 530 U.S. at 250 ("[W]hen a trustee in breach of fiduciary duty . . . transfers trust property to a third person, the third person takes the property subject to the trust . . . . The trustee or beneficiaries may then maintain an action for restitution of the property (if not already disposed of) or disgorgement of proceeds (if already disposed of), and disgorgement of the third person's profits derived therefrom.").

    3.    Statute of Limitations

As a final procedural bar, Barrett asserts that Plaintiffs' ERISA claims are time-barred.[5] Section 413 of ERISA provides that all claims based on breach of fiduciary duty must be brought within the earlier of:

    (1) six years after (A) the date of the last action which constituted a part of the

---

[4] As all parties cross-cite to documents included in the multiple motions, the Court will do so as well.

[5] Barrett also argues that the National Security Plaintiffs' ERISA claim is time-barred, but the Court notes that the National Security Plaintiffs do not assert an ERISA claim.

> breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113; Cetel v. Kirwan Fin. Group, Inc., 460 F.3d 494, 511 (3d Cir. 2006). Thus, ERISA offers a choice of limitations periods depending on whether the plaintiff has actual knowledge of the breach. Cetel, 460 F.3d at 511 (citations omitted). "Actual knowledge of a breach or violation requires that a plaintiff have actual knowledge of all material facts necessary to understand that some claim exists, which facts could include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm." Id. (citations omitted).

Plaintiffs assert that their ERISA claims are not based upon misrepresentations about the tax benefits of the EPIC plan. Rather, they claim that Defendants' ERISA violations arise from their conduct in extracting excessive commissions from Plaintiffs' EPIC contributions to their "reserve fund" without their knowledge or approval. (Pls.' Opp'n to Def. Barrett's Mot. [214] at 37-38.) Thus, they claim that they lacked actual knowledge of this particular breach until well within the three years before the ERISA claims were filed on December 29, 2000. (Id. at 38-39.)

Barrett argues that Cetel is not limited to a breach of fiduciary duty based upon alleged misrepresentation of tax benefits, but that it refers to any kind of breach of fiduciary duty. (Def. Barrett's Reply [214] at 3-4.) The Court, however, does not read Cetel so broadly. The Cetel court found that the "core" of those plaintiffs' breach of fiduciary duty claim was that the defendants made misrepresentations to them "concerning the legitimacy" of the employee welfare benefit plans. Id. at 511. Thus, the court determined that because the plaintiffs were aware more than three years before they filed their ERISA claims of IRS audits, examination reports, deficiency notices, IRS Notice 95-34, and the possibility that they would have to pay taxes,

penalties, and interest on money they thought would be tax-free, they had "actual knowledge" of defendants' breach, and thus, their claims were time-barred. Id. Here, however, Plaintiffs' knowledge of a breach in misrepresentations about the tax benefits of the plan does not equate to knowledge of a breach in misappropriation of plan contributions. Thus, the ERISA claims are not time-barred.

For the above reasons, the Court denies Barrett's motion as to Plaintiffs' ERISA claims.

C.   Counts II through VIII—federal and NJ RICO claims

For the reasons in this Court's Order granting and denying in part the Monumental Defendants' and the CJA Defendants' motions for summary judgment [docket nos. 215 and 216], the Court grants Barrett's motion as to the National Security Plaintiffs' claims under the Racketeer Influenced Corrupt Organizations Act ("federal RICO") and under the New Jersey Racketeering Act ("NJ RICO"), as they are time-barred. The claims of the Universal, Lima, and Alloy Cast Plaintiffs, however, are not time-barred and survive summary judgment on their merits.

D.   Count IX—NJ CFA Claim

Barrett argues that Plaintiffs' claim under the New Jersey Consumer Fraud Act ("NJ CFA") fails because the EPIC plan and his representations about it are not within the purview of the NJ CFA. The NJ CFA "is intended to protect consumers by eliminating sharp practices and dealings in the marketing of merchandise and real estate." Cetel, 460 F.3d at 514; N.J. Stat. Ann. § 56:8-1 et seq. By Plaintiffs' own description, the EPIC plan was a "purported multiple employer welfare plan" that qualified for favorable tax treatment and provided group term life insurance. (Compl. ¶¶ 51-52.) The EPIC plan was to have two benefits: (1) contributions made by the employers for the group term life insurance for their companies would be tax-deductible;

and (2) tax-free "retirement" income would be provided for the owners of the companies upon their conversion of the group policies to individual policies, with conversion credits drawn from the reserves of the plan funding the premiums at conversion.  (Compl. ¶¶ 53-55.)  Just like the plans at issue in Cetel, the EPIC plan was a "complex tax-avoidance scheme[] designed primarily to allow an investor to make tax-deductible contributions while allowing for a permanent tax deferral upon withdrawal."  Cetel, 460 F.3d at 514.  As in Cetel, the EPIC plan was marketed to a discrete class of capable investors and not the general public at large.  Id.  Therefore, the sale of a plan like the EPIC plan does not serve the intent of the NJ CFA, "to root out consumer fraud."  Id. at 515 (citations omitted).  Thus, Plaintiffs' claim under the NJ CFA cannot survive summary judgment.

Plaintiffs argue that the "service" they challenge under the NJ CFA is Defendants' provision of financial services, of which their recommendation of the EPIC plan was only one part.  (Pls.' Br. Supp. Mot. for Partial Summ. J. [217] at 28-29.)  However, Plaintiffs allege three misrepresentations under the NJ CFA: (1) that the EPIC plan was entitled to favorable tax treatment; (2) that the bulk of their contributions to the plan would accumulate in a "reserve fund"; and (3) the concealment of commissions extracted from contributions to the plan.  (Id. at 31-32.)  Thus, Plaintiffs' "financial services" argument is belied by the fact that the EPIC plan and Defendants' representations about it comprise the whole of their NJ CFA claim.  Thus, Barrett's motion for summary judgment is granted in part as to Plaintiffs' NJ CFA claim.

E.     Common Law Claims

    1.     ERISA Preemption

Barrett argues that ERISA preempts Plaintiffs' state claims that relate to in-plan activity.  Plaintiffs allege three misrepresentations about the EPIC plan: (1) that the plan qualified for

favorable tax treatment; (2) that the bulk of the contributions would accumulate in a reserve fund; and (3) that Defendants concealed their extraction of commissions from contributions intended for the reserve fund. (Pls.' Opp'n to Def. Barrett's Mot. [214] at 15.)

Plaintiffs' state law claims that are based on the pre-plan misrepresentations about the EPIC plan's tax advantages—conduct that occurred before the individual ERISA plans under the EPIC plan were established—are not preempted by ERISA. See, e.g., Faulman v. Sec. Mut. Fin. Life Ins. Co., No. 04-5083, 2006 U.S. Dist. LEXIS 60811, at *20 (D.N.J. Aug. 28, 2006); Finderne Mgmt. Co. v. Barrett, 809 A.2d 842, 855 (N.J. Super. Ct. App. Div. 2002). However, Plaintiffs' state law claims based on the misrepresentations relating to the administration of the ERISA plans under the EPIC plan—conduct occurring after the ERISA plans were established—are preempted by ERISA.[6] ERISA supersedes any state laws insofar as they "relate to" an ERISA plan. 29 U.S.C. § 1144(a). Plaintiffs allege misconduct in the administration of the plans, specifically, that Defendants did not maintain a reserve fund as promised, and that Defendants wrongfully misappropriated plan contributions for their own commissions. State laws that provide remedies for misconduct growing out of the administration of an ERISA plan have been held to "relate to" an ERISA plan, and are preempted. See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 990 (10th Cir. 1999); Finderne, 809 A.2d at 853. Thus, Plaintiffs state law claims for fraud (Count X), breach of fiduciary duty (Count XII), breach of contract (Count XIII), breach of the duty of good faith and fair dealing (Count XIV), and conspiracy and aiding and abetting (Count XVIII) are preempted by ERISA to the extent that they relate to Defendants' misrepresentations and misconduct regarding the "reserve fund" and

---

[6] The claims of the National Security Plaintiffs, however, against Barrett and the other Defendants regarding the reserve fund and commissions are not preempted, because the National Security plan was not an ERISA plan.

allegedly excessive commissions.

  2.  The Merits of the Common Law Claims

    a.  Counts X and XVII—Fraud and Conspiracy and Aiding and Abetting

  The Court finds genuine issues of material fact as to whether Barrett misled all Plaintiffs as to the tax benefits of the EPIC plan, whether Barrett also misled the National Security Plaintiffs regarding the existence of the reserve fund and whether and how Barrett received commissions, and whether Plaintiffs reasonably relied on his representations. The Court also finds genuine issues of material fact as to whether Barrett knowingly engaged in a "single plan" with the other Defendants to consciously misrepresent the tax benefits of the EPIC plan for their own profit. Morgan v. Union County Bd. of Chosen Freeholders, 633 A.2d 985, 998 (N.J. Super. Ct. App. Div. 1993). As to the National Security Plaintiffs, the Court finds genuine issues of material fact as to whether Barrett knowingly and substantially participated in misrepresenting the existence of a reserve fund and misappropriating plan contributions for Defendants' commissions. Thus, Barrett's motion for summary judgment of Plaintiffs' common law fraud claims and their conspiracy and aiding and abetting claims is denied.

    b.  Counts XII, XIII, and XIV—Breach of Fiduciary Duty, Breach of Contract, and Breach of the Duty of Good Faith and Fair Dealing

  Because the Court finds genuine issues of material fact exist as to Barrett's true role in recommending the EPIC plan to Plaintiffs, Plaintiffs' claims for breach of fiduciary duty, breach of contract, and breach of the duty of good faith and fair dealing survive as they pertain to all of Barrett's conduct toward the National Security Plaintiffs, and as they pertain to Barrett's representations about the tax benefits of the EPIC plan to the other Plaintiffs. The Court also finds that Plaintiffs' contract claims are not time-barred, as they would not have "reason to know"

of the breach until they had notice they may not receive their tax deductions as promised, which occurred, at the earliest, in 1995 with the publication of IRS Notice 95-34. See Morris v. Fauver, 707 A.2d 958, 972 (N.J. Super. Ct. App. Div. 1998) (stating that, while the "discovery rule" is "generally" not applied in contract actions, the purpose of the rule is to bar from recovery plaintiffs who had "reason to know" of their injuries). As to the National Security plaintiffs, they would not have had "reason to know" of Defendants' alleged misappropriation of plan funds for their own commissions until they attempted conversion to individual policies. As both events occurred within six years before the Complaint was filed on December 29, 2000, the Court will not dismiss the contract claims as time-barred.

F.    Punitive Damages Claim

In light of the multiple genuine issues of material fact that exist at this time, a reasonable jury may find Defendants acted with "actual malice" or "wanton and willful disregard" supporting an award of punitive damages for Plaintiffs' state law claims. N.J. Stat. Ann. § 2A:15-5.12. Thus, the Court will not grant summary judgment of Plaintiffs' punitive damages claim at this time, and Defendants may re-raise the issue at trial.

G.    Benefit-of-the-Bargain Damages

For the reasons in this Court's Order granting and denying in part the Monumental Defendants' and the CJA Defendants' motions for summary judgment [docket nos. 215 and 216], the Court grants Barrett's motion as to Plaintiffs' claims for damages based upon the benefits they expected to receive from the EPIC plan ("benefit-of-the-bargain damages").

CONCLUSION

To summarize, Barrett's motion for partial summary judgment is granted in part as to: (1) all counts against him by the Finderne Plaintiffs, except for their claim in Count I (ERISA); (2)

the claims of the National Security Plaintiffs in Counts II through VII (federal and NJ RICO); (3) the claims of all Plaintiffs in Count IX (NJ CFA); (4) the claims of all Plaintiffs except the National Security Plaintiffs in Counts X (fraud), XII (breach of fiduciary duty), XIII (breach of contract), XIV (breach of the duty of good faith and fair dealing), and XVIII (conspiracy and aiding and abetting), as those claims arise from Plaintiffs' "reserve fund" and commissions theories; and (4) Plaintiffs' claims for benefit-of-the-bargain damages.

Barrett's motion for partial summary judgment is <u>denied in part</u> as to: (1) the claims of all Plaintiffs in Count I; (2) the claims of the Universal, Lima, and Alloy Cast Plaintiffs in Counts II through VIII; (3) the claims of all Plaintiffs in Counts X, XII, XIII, XIV, and XVIII, as those claims arise from Plaintiffs' tax benefits theory; (4) the claims of the National Security Plaintiffs in Counts X, XII, XIII, XIV, and XVIII, as those claims arise from all three of Plaintiffs' theories; and (5) Plaintiffs' punitive damages claim.

For the foregoing reasons, and for good cause shown,

IT IS on this 24th day of September, 2007,

ORDERED that Defendant James W. Barrett's Motion for Summary Judgment [214] is GRANTED IN PART and DENIED IN PART.

s/ Anne E. Thompson
_____
ANNE E. THOMPSON, U.S.D.J.