<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| _____ : | |
| NAT'L SEC. SYS., INC., et al., : | |
| : | |
| Plaintiffs, : | |
| : | Civil No. 00-6293 (AET) |
| v. : | |
| : | **<u>MEMORANDUM & ORDER</u>** |
| ROBERT L. IOLA, JR., et al., : | |
| : | |
| Defendants. : | |
| _____ : | |

<u>THOMPSON, U.S.D.J.</u>

　　This matter comes before the Court upon Defendants Monumental Life Insurance Company, Commonwealth Life Insurance Company, and Peoples Security Life Insurance Company's (collectively, "the Monumental Defendants") motion for summary judgment [docket no. 215], and upon Defendants CJA and Associates, Inc., Raymond J. Ankner, and Beaven Companies, Inc.'s (collectively, "the CJA Defendants") motion for summary judgment [docket no. 216]. The Court has decided these motions after reviewing the submissions of the parties and without oral argument, pursuant to Fed. R. Civ. P. 78. For the following reasons, the motions are granted in part and denied in part.

BACKGROUND

　　For the sake of brevity and in light of the multiple motions before the Court, the Court will not repeat the facts and procedural history of this case for each motion the Court considers. Instead, the Court incorporates by reference its Order granting in part and denying in part Defendant Barrett's motion for partial summary judgment [docket no. 214]. The claims asserted

-1-

against the Monumental Defendants are: (1) conspiracy to violate federal and NJ RICO (Counts VI and VIII); (2) violation of the NJ CFA (Count IX); (3) common law fraud (Count X); (4) negligent misrepresentation (Count XI); (5) respondeat superior for Barrett's conduct (Count XVII); and (6) conspiracy and aiding and abetting (Count XVIII).  The claims by the Finderne Plaintiffs against the Monumental Defendants have been dismissed due to settlement.

The only claims asserted against the CJA Defendants are: (1) conspiracy to violate federal and NJ RICO (Counts VI and VIII); and (2) conspiracy and aiding and abetting (Count XVIII). The Monumental and CJA Defendants now seek summary judgment of all claims against them.

<u>STANDARD OF REVIEW</u>

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323; Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 414 (3d Cir. 1999).  The moving party may cite to the pleadings, depositions, answers to interrogatories, or admissions on file, to demonstrate that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  To survive a motion for summary judgment, the nonmoving party cannot rely merely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "[L]egal conclusions, unsupported by documentation of specific facts, are insufficient to create issues of material fact that would preclude summary judgment."  Jersey Cent. Power & Light Co. v. Twp. of Lacey, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

DISCUSSION

A.    Counts II through VIII—Federal and NJ RICO Claims

        1.    Statute of Limitations

        The Monumental Defendants argue, as do the other Defendants by incorporation, that

Plaintiffs' federal and NJ RICO claims are time-barred.  Although only Counts VI and VIII apply

to the Monumental and CJA Defendants, the Court will consider the statute of limitations

argument as it applies to all of the Plaintiffs' federal and NJ RICO claims.[1]   First, the Court must

determine the operative filing date for the Plaintiffs' federal and NJ RICO claims.  As to the

National Security, Universal Mailing, and Lima Plaintiffs, the operative date is December 29,

2000, when they filed the Complaint in the instant action, alleging such claims.  The Alloy Cast

Plaintiffs, however, filed a complaint in the state court Alloy Cast action on February 25, 1999,

alleging violation of NJ RICO.  After that case followed a complex route of removal, remand,

dismissal, appeal, reversal, and remand, the Alloy Cast Plaintiffs amended their state court

complaint on March 10, 2004, to include federal RICO claims.  On the basis of that amendment,

the case was removed to this Court on March 18, 2004, and consolidated with this case on May

14, 2004.  Thus, the operative date for the Alloy Cast Plaintiffs' federal and NJ RICO claims is

February 25, 1999, because both claims arise out of the same alleged conduct.  See N.J. Court R.

4:9-3 (stating that when the claim arises out of the conduct, transaction, or occurrence in the

original pleading, "the amendment relates back to the date of the original pleading").

        Plaintiffs do not contest that federal and NJ RICO actions are subject to a four-year statute

of limitations.  See Cetel v. Kirwan Fin. Group, Inc., 460 F.3d 494, 506, 510 (3d Cir. 2006);

---

[1]    The Finderne Plaintiffs' state court action and the Alloy Cast Plaintiffs' state court action
are referred to, respectively, as "the Finderne action," and "the Alloy Cast action."  Plaintiffs
agree that the Finderne Plaintiffs must pursue their federal and NJ RICO claims in the Finderne
action in state court.

Forbes v. Eagleson, 228 F.2d 471 (3d Cir. 2000).  Thus, the question is whether the Alloy Cast

Plaintiffs were on "inquiry notice" of their injuries by February 25, 1995, and whether the

National Security, Universal, and Lima Plaintiffs were on "inquiry notice" by December 29,

1996.  This objective inquiry asks when Plaintiffs "should have known of the basis of their

claims, which depends on whether and when they had sufficient information of possible

wrongdoing to place them on 'inquiry notice' or to excite 'storm warnings' of culpable activity."

Cetel, 460 F.3d at 507 (citations omitted).  Plaintiffs have inquiry notice "whenever

circumstances exist that would lead a reasonable investor of ordinary intelligence, through the

exercise of due diligence, to discovery of his or her injury."  Id.  Storm warnings are "any

information or accumulation of data that would alert a reasonable person to the probability that

misleading statements or significant omissions had been made."  Id.  Plaintiffs do not have to be

actually aware of suspicious circumstances, or able to "understand their import."  It is enough if

"a reasonable investor of ordinary intelligence would have discovered the information and

recognized it as a storm warning.  This charge saddles the investor with responsibilities like

reading prospectuses, reports, and other information related to the investments, and, additionally,

assumes knowledge of publicly available news articles and analyst's reports."  Id. (citations

omitted).  If storm warnings were present, Plaintiffs must show that "heeding the storm warnings,

they exercised reasonable diligence but were unable to find and avoid the storm."  Id.

Here, the earliest date Plaintiffs could have been on "inquiry notice" was June 1995, when

the IRS published Notice 95-34, stating that contributions to plans like the EPIC plan were not

tax-deductible.  Because the Alloy Cast Plaintiffs are deemed to have filed their federal and NJ

RICO claims as of February 25, 1999, the Alloy Cast Plaintiffs' claims are not time-barred.

a.      The National Security Plaintiffs

-4-

After publication of IRS Notice 95-34, in June 1995, Capello, National Security's principal, received and forwarded to Iola an industry publication stating that the IRS had definitively stated that deductions under the EPIC plan were disallowed.  Although Barrett claimed in July 1995 that the EPIC plan's favorable tax treatment was guaranteed, Capello continued to question Iola, asking him on November 6, 1995, whether National Security could cancel immediately.  In 1996, National Security's outside accountant told Capello that the contributions were not deductible after Capello asked him why he had not deducted them on the company's tax returns.  In fact, Capello knew in the company's first tax year after enrolling that the contributions were not deducted.  (Def. Iola's Br. Supp. Mot. for Partial Summ. J. [213] Ex. H.)  Even though Capello had an independent financial advisor, he never directly asked him about the EPIC plan.  (Id.)  Thus, by 1996, the National Security Plaintiffs were aware of sufficient storm warnings as to the lawfulness of the EPIC plan.  Further, the National Security Plaintiffs did nothing to attempt to discover their injuries other than question Defendants about the plan, even when an independent financial advisor was at their fingertips.  This is insufficient to show reasonable diligence.  See Cetel, 460 F.3d at 508-09.  Thus, in light of these facts, the National Security Plaintiffs' claims are time-barred.

> b.    The Universal and Lima Plaintiffs

Defendants argue that, under Cetel, the publication of IRS Notice 95-34 alone was sufficient to put Plaintiffs on inquiry notice in June 1995.  The Cetel court held, however, that IRS Notice 95-34, only in conjunction with audits of some of the plaintiffs and a withdrawn endorsement by a medical society, were sufficient to constitute storm warnings in 1995 that the plaintiffs were obligated to investigate.  Id. at 507.  Moreover, the Universal and Lima Plaintiffs claim to have been unaware of IRS Notice 95-34 before they were audited in February 1997 and

March 1998, respectively.  While they may be charged with inquiry notice as of those audits, they still filed their Complaint within the four-year statute of limitations period.

    2.    <u>Merits of the federal and NJ RICO claims</u>

Plaintiffs present facts to support their allegation that Defendants' "pattern of racketeering activity" included unlawfully misappropriating plan contributions and engaging in a scheme to attract more participants to the EPIC plan.  The Court finds that genuine issues of material fact exist as to whether Defendants participated in a RICO "enterprise," "separate and apart" from the pattern of alleged racketeering activity, such as the EPIC plan and trust itself, or some other coordinated "framework" to market and implement the EPIC plan.  <u>See</u> <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981); <u>United States v. Di Gilio</u>, 667 F. Supp. 191, 195 (D.N.J. 1987).  Thus, the Court will not grant summary judgment on the argument by Defendant Barrett, and the other Defendants by incorporation, that there was no "separate enterprise."

The Court further finds genuine issues of material fact as to whether Defendants may be liable for conspiracy to violate federal and NJ RICO by knowingly agreeing to facilitate a scheme that included the operation of a RICO enterprise.  <u>See</u> <u>Smith v. Berg</u>, 247 F.3d 532, 536-38 (3d Cir. 2001); <u>see</u> <u>also</u> <u>State v. Ball</u>, 141 N.J. 142, 180 (1995) (stating that for liability a defendant must act "knowingly and purposely with knowledge of the unlawful objective of the conspiracy and with the intent to further its unlawful objective").  While the Monumental Defendants argue that they only supplied life insurance coverage for the EPIC plan (Monumental Defs.' Br. [215] at 16), Plaintiffs contend that the Monumental Defendants knowingly entered into commissions arrangements with Tri-Core and the other Defendants funded by plan contributions that were intended for what Plaintiffs believed to be a "reserve fund" (<u>see,e.g.</u>, Supplemental Fram Cert. Supp. Pls.' Opp'ns to Mots. for Summ. J. Exs. D, E, F, K, M, JJ, and EEE at 271:14-272:20).

The CJA Defendants argue that they acted only as an insurance consulting firm that marketed to the independent insurance agents the insurance products sold by the Monumental Defendants, and never had any agreements with Tri-Core to market the EPIC plan directly to Plaintiffs.  They also insist that they never paid to or received from Tri-Core any money whatsoever, but received payment only from the Monumental Defendants.  While the CJA Defendants maintain that any monies they received were not from the EPIC plan, Plaintiffs contend that the compensation the Monumental Defendants paid to the CJA Defendants, and that the CJA Defendants paid to Tri-Core, was wrongfully converted plan contributions intended for a "reserve fund," and that the CJA Defendants received and paid this compensation knowing full well its source, and intending to continue marketing the EPIC plan, in order to continue to generate this "wrongful compensation."  (See, e.g., Fram Cert. Supp. Pls.' Mots. for Summ. J. [217], [218] Ex. II at 42-45; Supplemental Fram Cert. Supp. Pls.' Opp'ns Exs. N, JJ (letter from Ankner to an affiliate of the Monumental Defendants stating that "CJA, and several of our major producers, have invested substantial time, effort and money in developing and marketing the 'Continuous Group' and 'Redfearn' products and the 419A(f)(6) concept").)  Further, while the CJA Defendants argue that the only written agreement they had with Tri-Core regarded a separate and independent product called the "GEAR program," Plaintiffs' assert that the "GEAR program" had the same features of and benefits provided by the EPIC plan.  (Supplemental Fram. Cert. Supp. Pls.' Opp'ns Ex. NN.)

Although the parties argue for different constructions and meanings of the evidence presented, those questions are for the trier of fact to resolve.  See Goldinger v. Boron Oil Co., 375 F. Supp. 400, 412 (W.D. Pa. 1974) (stating that "where a case depends on the resolution of conflicting inferences of fact which may be drawn from the undisputed terms of a writing

summary judgment is improper"). Due to these disputed issues of material fact, the Court will

deny Defendants' motion for summary judgment of Plaintiffs' claims of conspiracy to violate

federal and NJ RICO.

B.    Count X—Fraud, Count XI—Negligent Misrepresentation, and Count XVIII—Conspiracy and Aiding and Abetting

        The Monumental Defendants argue that Plaintiffs cannot establish triable issues of fact as

to their fraud, negligent misrepresentation, and conspiracy and aiding and abetting claims because

there is no evidence that the Monumental Defendants acted with fraudulent intent. Just as with

Plaintiffs' federal and NJ RICO claims, and for the reasons stated in the Court's Order granting

and denying in part Barrett's motion for partial summary judgment [docket no. 214], the Court

finds genuine issues of material fact as to whether the Monumental Defendants knowingly

participated in misleading Plaintiffs as to the tax benefits of the EPIC plan, the existence of the

reserve fund, whether and how commissions would be paid, and whether Plaintiffs reasonably

relied on the alleged misrepresentations. There are also genuine issues of material fact as to

whether Defendants knew or should have known that the contributions would not be tax

deductible, or whether they simply opined that the contributions would be tax deductible. (See,

e.g., Supplemental Fram. Cert. Supp. Pls.' Opp'ns Exs. HHH, III.) Finally, for the same reasons

as detailed above in addressing the conspiracy to violate federal and NJ RICO claims, the Court

also finds genuine issues of material fact as to whether the Monumental Defendants and the CJA

Defendants knowingly engaged in a "single plan" with the other Defendants in making these

misrepresentations. Morgan v. Union County Bd. of Chosen Freeholders, 633 A.2d 985, 998

(N.J. Super. Ct. App. Div. 1993). Thus, the Monumental and CJA Defendants' motions for

summary judgment of Plaintiffs' fraud, negligent misrepresentation, and conspiracy and aiding

and abetting claims are denied.

However, for the reasons stated in this Court's Order granting and denying in part Barrett's motion for partial summary judgment [docket no. 214], the Universal, Lima, and Alloy Cast Plaintiffs' claims for fraud (Count X) against the Monumental Defendants, and conspiracy and aiding and abetting (Count XVIII) against the Monumental Defendants and the CJA Defendants are preempted by ERISA to the extent that those claims are based upon any activity regarding misrepresentations and misconduct pursuant to the "reserve fund" and allegedly excessive commissions.  The claims of the National Security Plaintiffs, however, are not preempted.

C.     Count XVII—Respondeat Superior

The Monumental Defendants argue that they cannot be liable for Barrett's actions as he was an independent contractor and Barrett had no apparent authority to act as an agent of the Monumental Defendants.  The Monumental Defendants cite Barrett's agreement with their predecessors to sell their life insurance products expressly declaring him to be an independent contractor and they also argue that, other than retaining the right to approve the marketing materials, they did not direct or control the manner in which Barrett sold the life insurance.  (See, e.g., Bettino Cert. Supp. Monumental Defs.' Mot. [215] Ex. 10).  Further, they agree with Plaintiffs that Barrett was their longtime financial advisor, and that he proposed the EPIC plan to them in that capacity.

Plaintiffs do not address this argument in their brief in opposition to the Monumental Defendants' motion.  Nor do they address it in the context of other claims.  Further, in Plaintiffs' response to the Monumental Defendants' statement of material facts, Plaintiffs admit that Barrett recommended the EPIC plan to them as a financial advisor for Cigna/Lincoln, not the

Monumental Defendants, and they do not deny that Barrett's agreements with the Monumental Defendants' predecessors declared him to be an independent contractor (Pls.' Resp. to Monumental Defs.' Statement of Material Facts Supp. Mot. for Summ. J. [215] ¶¶ 15, 49, 50, 53). Though Plaintiffs deny that the Monumental Defendants did not direct or control the way the insurance policies were marketed through the EPIC plan (Pls.' Resp. ¶ 50), they offer no evidence that the Monumental Defendants directed or controlled the manner in which Barrett acted. See Baldasarre v. Butler, 625 A.2d 458, 465 (N.J. 1993). Moreover, Plaintiffs offer no evidence to establish that the conduct of the Monumental Defendants "caused [Plaintiffs] to reasonably believe that [Barrett] ha[d] authority" to act for the Monumental Defendants. See AT&T Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1439 (3d Cir. 1994). Thus, the Court will grant the Monumental Defendants' motion for summary judgment of Plaintiffs' claim against them under the doctrine of respondeat superior for Barrett's actions.

D.      Benefit-of-the-Bargain Damages

        The Monumental Defendants, and the other Defendants by incorporation, argue that Plaintiff cannot recover benefit-of-the-bargain damages as they are improper and speculative. Plaintiffs seek damages from their inability to take deductions or make further contributions to the EPIC plan as a result of the IRS audits and disallowance of the deductions. The Court agrees with Defendants that such damages would be highly speculative, based upon projected years of possibly fluctuating contributions and investments. Second, regardless of whether the EPIC plan constituted an "illegal scheme," Plaintiffs seek benefits that they would not have been entitled to pursuant to the positions taken by the IRS. Awarding Plaintiff such damages would effectively allow Plaintiff the benefits and deductions that the IRS did not. Thus, the Court would be enforcing the EPIC plan, although the IRS has prohibited it. This the Court cannot do.

-10-

E.      Count IX—NJ CFA claim

        For the reasons stated in the Court's Order granting and denying in part Barrett's motion
for partial summary judgment [docket no. 214], the Court grants the Monumental Defendants'
motion as to Plaintiffs' NJ CFA claim.

CONCLUSION

        To summarize, no claims remain against the Monumental Defendants or the CJA
Defendants by the Finderne Plaintiffs, due to settlement and/or the continuance of the Finderne
action.  The Monumental Defendants' motion for summary judgment is granted in part as to: (1)
the claims of the National Security Plaintiffs in Counts II through VIII (federal and NJ RICO); (2)
the claims of all Plaintiffs except the National Security Plaintiffs in Counts X (fraud) and XVIII
(conspiracy and aiding and abetting), as those claims arise from Plaintiffs' "reserve fund" and
commissions theories; (3) the claims of all Plaintiffs in Count XVII (respondeat superior); (4) the
claims of all Plaintiffs in Count IX (NJ CFA); and (5) Plaintiffs' claims for benefit-of-the-bargain
damages.

        The Monumental Defendants' motion for summary judgment is denied in part as to: (1)
the claims of the Universal, Lima, and Alloy Cast Plaintiffs as to Counts II through VIII; (2) the
claims of all Plaintiffs in Counts X and XVIII, as those claims arise from Plaintiffs' tax benefits
theory; and (3) the claims of all Plaintiffs in Count XI (negligent misrepresentation).

        The CJA Defendants' motion for summary judgment is granted in part as to: (1) the
claims of the National Security Plaintiffs in Counts II through VIII (federal and NJ RICO); (2) the
claims of all Plaintiffs except the National Security Plaintiffs in Count XVIII (conspiracy and
aiding and abetting), as those claims arise from Plaintiffs' "reserve fund" and commissions
theories; (3) Plaintiffs' claims for benefit-of-the-bargain damages; and (4) all claims against them

-11-

by the Finderne Plaintiffs.  The CJA Defendants' motion is <u>denied in part</u> as to: (1) the claims of the Universal, Lima, and Alloy Cast Plaintiffs as to Counts II through VIII; and (2) the claims of all Plaintiffs in Count XVIII, as those claims arise from Plaintiffs' tax benefits theory.

For the foregoing reasons, and for good cause shown,

IT IS on this 24th day of September, 2007,

ORDERED that Defendants Commonwealth Life Insurance Company, Monumental Life Insurance Company, and Peoples Security Life Insurance Company's Motion for Summary Judgment [215] is GRANTED IN PART and DENIED IN PART; and it is further

ORDERED that Defendants CJA and Associates, Inc., Raymond J. Ankner, and Beaven Companies, Inc.'s Motion for Summary Judgment [216] is GRANTED IN PART and DENIED IN PART.

s/Anne E. Thompson
_____
ANNE E. THOMPSON, U.S.D.J.