NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NATIONAL SECURITY SYSTEMS, INC., et al., | : : : : | |
| Plaintiff, | : : | Civil No. 00-6293 (AET) |
| v. | : : | **OPINION & ORDER** |
| Robert L. IOLA, Jr., et al., | : : | |
| Defendants. | : : | |

THOMPSON, U.S.D.J.

This matter has come before the Court upon Plaintiffs Jose M. Caria, Margit Gyantor, Lima Plastics (collectively, "Lima Plastics Plaintiffs"), Kenneth Fisher, Frank Panico, Alloy Cast Products, Inc. (collectively, "Alloy Cast Plaintiffs"), Michael Maroney Sr., Michael Maroney Jr., and Universal Mailing Service, Inc.'s (collectively, "Universal Mailing Plaintiffs") Motion for a New Trial [docket # 460] on their civil RICO claims and on the issue of damages and for judgment notwithstanding the verdict on the issue of the jury's apportionment of liability between Defendant Jim Barrett and certain absent defendants. The Court has decided the motion upon the submissions of both parties, pursuant to Fed. R. Civ. P. 78(b). For the reasons stated below, Plaintiffs'[1] Motion for a New Trial is denied.

---

[1] The Court refers in this motion to the Lima Plastics Plaintiffs, the Alloy Cast Plaintiffs, and the Universal Mailing Plaintiffs collectively as "Plaintiffs." Another group of Plaintiffs, referred to as the "Finderne Plaintiffs," were also present at trial but did not assert a civil Rico or common-law breach of fiduciary claim because they had already tried those matters in state court. The group of plaintiffs, referred to as the "National Security Plaintiffs," settled all of their claims prior to the start of trial.

BACKGROUND

The Court assumes that all parties are familiar with the factual and procedural background of this matter. To provide a quick summary of events relevant to this motion, Plaintiffs' civil RICO and common-law breach of fiduciary duty claims were tried to a jury, while Plaintiffs' ERISA claims were tried to the bench in an eleven-day trial. On Dec. 16, 2009, the jury rendered its verdict, finding that Barrett had not violated RICO, but that he had a common-law fiduciary relationship with Plaintiffs and that he breached his fiduciary duties. Based on this breach, the jury awarded damages in the amounts of $128,925 to the Alloy Cast Plaintiffs, $133,415 to the Lima Plastics Plaintiffs, and $176,643 to the Universal Mailing Plaintiffs. On Dec. 17, 2009, the jury apportioned liability under New Jersey's comparative negligence statute between Barrett and absent defendants Tri-Core, Inc. ("Tri-Core") and Ronn Redfearn.[2] The jury assigned 50% of the fault to Barrett and 50% to Tri-Core/Redfearn.[3]

The Lima Plastics Plaintiffs, Alloy Cast Plaintiffs, and Universal Mailing Plaintiffs have now moved for a new trial on the civil RICO claims based on the alleged misconduct of Barrett's counsel, Christopher Leise, Esq. from White & Williams, LLP, and on the issue of damages based on some irregularities with the jury verdict forms. In addition, the Lima Plastics Plaintiffs,

---

[2]Tri-Core and Redfearn were absent because Redfearn passed away in 2004 and Tri-Core filed a Chapter 7 bankruptcy petition in 2005. Tri-Core and Redfearn will hereinafter be referred to jointly as Tri-Core/Redfearn, consistent with the parties' stipulation at trial that they be treated as one party. (Tr. 12/17/09 14:9-12.)

[3]The Court heard additional oral argument on Plaintiffs' ERISA claims and entered an opinion onto the record on those claims on June 16, 2010. Because that portion of the trial is not at issue on this motion, the Court will not recount the details of its ERISA holding in any further detail at this time.

Alloy Cast Plaintiffs, and Universal Mailing Plaintiffs have moved for judgment notwithstanding the verdict on the issue of apportionment of liability between Barrett and the absent defendants Tri-Core and Redfearn.

## ANALYSIS

**I.     Opposing Counsel Did Not Engage in Prejudicial Misconduct**

A district court may grant a motion for a new trial "for any of the reasons for which new trials have heretofore been granted." Fed. R. Civ. P. 59(a)(1). One of the established reasons for a new trial is the misconduct of opposing counsel. When such a motion is based on the improper remarks of opposing counsel, the district court must determine whether "the improper assertions have made it 'reasonably probable' that the verdict was influenced by prejudicial statements." *Fineman v. Armstrong World Industries, Inc.*, 980 F.2d 171, 207 (3d Cir. 1992) (quoting *Draper v. Airco, Inc.*, 580 F.2d 91, 97 (3d Cir. 1978)).

Plaintiffs argue that Mr. Leise misrepresented key facts in a prejudicial manner when he stated in his closing remarks that Barrett's compensation came from the insurance companies rather than Tri-Core.[4] When Plaintiffs raised their initial objection to these remarks, the Court made clear that it found the suggestion that Mr. Leise had mislead the jury to be "inappropriate." (12/16/09 Tr. 14:15-25.) The Court stands by its prior ruling, finding that Mr. Leise did not

---

[4] Plaintiffs also "submit that the Court erred in excluding documents which demonstrated the managerial role that Barrett played in Tri-Core." (Mot for New Trial 14.) However, they have based their motion for a new trial solely on Mr. Leise's alleged misconduct in taking advantage of the exclusion of these documents. The Court does not believe that the documents were excluded in error. There was substantial other evidence establishing a connection between Barrett and Tri-Core to satisfy the enterprise element of civil RICO, and submission of the commissions checks to the jury would have been duplicative and confusing given that the jury had been instructed not to consider the issue of the alleged impropriety of the commission payments. (*See* 12/15/09 Tr. 13:1-14:7.)

misrepresent key facts or attempt to mislead the jury but simply presented an interpretation of the evidence consistent with his role as his client's advocate.[5]

## II. The Jury Verdict Is Not Inconsistent

It is well established that inconsistent jury verdicts may be appropriate grounds to grant a new trial. *Romer v. Baldwin*, 317 F.2d 919 (3d Cir. 1963); *Mosley v. Wilson*, 102 F.3d 85, 91 (3d Cir. 1996). However, before ordering a new trial, it is the duty of the Court to determine if a harmonious and fair reading of the jury's answers to the interrogatories exists. *Gallick v. Baltimore & O. R. Co.*, 372 U.S. 108, 119 (1963); *Andrasko v. Chamberlain Mfg. Corp.*, 608 F.2d 944, 947 (3d Cir. 1979). Plaintiffs argue that a new trial is necessary because scribbling on the verdict sheet indicates that the jury did not award Plaintiffs the amount necessary to reasonably compensate them and because the jury failed to fill out a supplemental interrogatory form on damages which had been submitted to them.

The Court initially gave the jury a verdict sheet with one damages question:

> 6. What amount of money will fairly and reasonably compensate each Plaintiff for its injury caused by Barrett's violation of the RICO statute or his breach of his fiduciary duties?
> Alloy Cast $_____
> Lima Plastics $_____
> Universal Mailing $_____

(Jury Verdict #1 [427].) The jury was instructed that:

---

[5]Tri-Core and Barrett received commissions based on the insurance policies sold to Plaintiffs' Plans. Plaintiffs presented evidence that Barrett received his commission checks from Tri-Core. (12/1/09 Tr. 44:10-50:15; Ex. P-84.) However, Barrett also testified that his commission agreement was with the insurance company (*id.* at 50:6-50:15) and that the money he received from Tri-Core came from the insurance companies' general reserves and was simply passed on to him by Tri-Core (*id.* at 49:12-50:11). In closing, Leise stated that: "[Barrett] was not compensated by Tri-Core. . . . [T]he evidence is that Mr. Barrett was compensated by [the insurance company]. They paid the commissions because they were in the business of selling insurance policies and that's how it works in the world of insurance." (12/15/09 Tr. 12:5-15.)

> [i]n considering the issue of plaintiffs' damages, you should assess the amount you find to be justified by a preponderance of the evidence as full, just and reasonable compensation for all of the plaintiffs' damages caused by the defendant, no more and no less. Compensatory damages are not allowed as punishment and must not be imposed or increased to penalize a defendant. Also, compensatory damages must not be based on speculation or guesswork. It's only actual damages that can be recovered. . . . Now in determining plaintiffs' actual damages, any losses which plaintiffs allegedly incurred may be offset by the value of the tax benefits plaintiff received and the value of the life insurance policies that plaintiffs received over the years as a result of the EPIC plan.

(12/15/09 Tr. 34:23-36:21.) The jury was advised that—if they found Barrett liable and thus reached the issue of damages—they may be asked to break down the damages amounts into multiple figures per group of Plaintiffs. (*Id.* at 40:14-21.)

After the first day of jury deliberations, the Court provided the jury with a supplemental verdict sheet which broke down the damages for each group of plaintiffs into five line items, two for out-of-pocket damages and three for potential offsets.[6] (Mot. for New Trial, Fram Decl., Ex. E [460-3] ["Supplemental Verdict Sheet"]). The jury was instructed that:

> [I]f you were to get to Question Number 6, it might be helpful to have some kind of a breakdown of structure. And so, we tried to design a kind of more specific Question Number 6. So, I would suggest that you just cross off Question 6 on your verdict sheet and substitute what I'm giving you now. This is only for Question 6. And what it does is just to make it more specific as to how the kind

---

[6]For example, damages for the Alloy Cast Plaintiffs were broken down as follows:

Alloy Cast:
    Out of Pocket Amounts:
        Contributions to EPIC Plan    $_____
        Taxes and Fees Incurred on Audit    $_____
    Offsets:
        Value of Term Life Insurance    $_____
        Value of Loans from Conversion Policies
        plus Current Value of Conversion Policies    $_____
        Value of Tax Benefits on Contributions    $_____

(Supplemental Verdict Sheet.)

>  of - - breakdown in your own mind the various ways that would be considered if you get that far.

(12/16/09 Tr. 4:12-21.)  No objection was entered to these instructions after they were read to the jury.

On December 16, 2009, when the jury returned with a verdict, they had completed only the original verdict form, and the text of question 6 on the completed form had been scribbled over while a single damages number had been filled in for each group of plaintiffs.  (Jury Verdict #1.)  After the jury left the room, counsel discussed at some length whether more detail on the damages number was needed for the purposes of applying pre-judgment interest.  (12/16/09 Tr. 22:9-25:3.)  The following morning, the Court suggested that the jury be instructed to provide the components of their damages figure.  (12/17/09 Tr. 7:18-8:12.)  Counsel for Barrett responded that their damages expert had determined that the damages figures were equivalent to the costs of the IRS audit to each group of Plaintiffs and suggested that counsel for both parties had stipulated as much.  (12/17/09 Tr. 7:18-8:12.)  Counsel for Plaintiffs did not object to this representation and the jury was not sent back out on this issue.[7]

The Court is obligated at this point to look at the jury's answer to the interrogatories as a whole to determine if there is an inconsistency which would make a new trial necessary.  The Court concludes that a new trial is not warranted.  The answers returned by the jury on the original verdict sheet are not inconsistent.  The jury's answers to the interrogatories on the

---

[7]Defendant argues that Plaintiffs waived their ability to move for a new trial due to their failure to insist that the jury be sent back for further deliberations when the verdict was read and it was clear that the jury had not filled out the supplemental verdict sheet.  However, the Third Circuit has recognized that it is not necessary for a party to lodge an inconsistency objection to special verdicts rendered under Rule 49(a) prior to the district court's dismissal of the jury in order to raise the inconsistency issue on appeal.  *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1056-57 (3d Cir. 1991).

original verdict sheet were not contradicted by or made inconsistent by the jury's failure to complete the supplementary verdict sheet.  Unlike the cases cited by Plaintiffs, the Court need not supply its own answer to the question on the supplemental verdict sheet or make an assumption as to what the jurors' answer was intended to be in order to enter judgment in this case—the jury provided a clear answer to all questions on the original verdict form, which provided sufficient information for the Court to enter judgment.  *Cf. Acurcu v. Lummus Co.,* 387 U.S. 86 (1986)*; Franki Foundation Co. v. Alger-Rau & Associates, Inc.,* 513 F.2d 581, 585 (3d Cir. 1975) (new trial necessary when incomplete verdict sheet required judge to either supply own answer or assume jury's answer to a question).  The supplemental verdict sheet was presented to the jury as an aid in reaching an answer for Question 6, and therefore it was not inconsistent for them to move straight to Question 6 if they felt capable of doing so.  The jury was under no obligation to award an amount of damages that equaled any combination of the line items on the supplemental verdict sheet but rather was simply required to return an amount of damages that would provide a reasonable and fair amount of compensation to Plaintiffs.  They did this by completing Question 6 on the original verdict sheet.

  Further, the Court does not believe that scribbles on the completed verdict sheet necessitates drawing the conclusion that the jury failed to follow the instructions presented to them on the issue of damages.  Indeed, to the contrary, the marks on the verdict sheet are consistent with the Court's suggestion that "you just cross off Question 6 on your verdict sheet and substitute what I'm giving you now."  (12/16/09 Tr. 4:12-21.)  Plaintiffs waived their ability to object to actions taken by the jury consistent with this instruction by not timely objecting when the jury was charged on the supplemental verdict sheet.  *Marra v. Philadelphia Housing*

*Authority*, 497 F.3d 286, 312 fn. 21 (3d Cir. 2007) (citing *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 84-85 (2d Cir. 2006) ("Waiver of an objection to an inconsistent verdict has been found . . . when the inconsistency was caused by an improper jury instruction . . . and there was no objection to . . . the instruction . . . prior to submission of the case."). Whether the jury was considering the original Question Number 6 or the more detailed damages question on the supplemental verdict sheet, the jury had been instructed to determine an amount of damages that would fairly and reasonably compensate each group of Plaintiffs. The extraneous marks on the verdict sheet give the Court no reason to believe that the jury did not follow these instructions.

### III.    There was Sufficient Evidence to Support the Jury's Verdict on the Allocation Issue

Plaintiffs have moved for judgment notwithstanding the verdict on the issue of apportionment of liability between Barrett and absent defendants Tri-Core/Redfearn. The jury was instructed that they were to apportion fault between Barrett and Tri-Core/Redfearn and Monumental Insurance Company if they found that the other defendants were at fault for making negligent misrepresentations regarding tax issues. When considering a motion for judgment notwithstanding the verdict, a district court must view the evidence in the light most favorable to the non-moving party and determine whether the record contains a minimum quantum of evidence from which a jury could have reasonably reached its verdict. *Mosley*, 102 F.3d at 89.[8]

---

[8]Defendant suggests that Plaintiffs' argument is better understood as a motion for a new trial which relies on a weight-of-the-evidence argument. (Opp. 17.) This point has some validity, particularly given the fact that one of the arguments Plaintiffs rely on is alleged flaws in the Court's charge to the jury, an error that would require at least a partial new trial. A court may grant a new trial on the grounds that the weight of the evidence does not support the jury's verdict only if a "miscarriage of justice" would result if the verdict were to stand. *Kelin v. Hollings*, 992 F.2d 1285, 1290 (3d Cir. 1993). The difference between the two standards is of no significance in this instance, however, because the Court finds that there was more than enough evidence to support the verdict reached by the jury.

Plaintiffs first argue that judgment notwithstanding the verdict must be granted because there was insufficient evidence that either Tri-Core or Redfearn made affirmative misrepresentations of fact. Plaintiffs assert that the representations made by those absent defendants were opinions and thus cannot be the basis for a verdict of liability for negligent misrepresentation. The Court, however, properly charged the jury in this respect, discussing in some detail how Barrett bore the burden of proving that Tri-Core/Redfearn made a false statement of fact rather just giving an opinion. (12/17/09 Tr. 30:3-25.) The decision as to whether the statements made to Plaintiffs were opinions or representations of facts was a question of fact properly left to the jury upon both the determination of Barrett's liability and when the jury was recharged on the issue of comparative fault.

Next, Plaintiffs argue that there is no evidence that Plaintiffs relied on the misrepresentations of Tri-Core/Redfearn. Plaintiffs point to the fact that documents submitted at trial contained express signed statements to the effect that Plaintiffs were not to rely upon Tri-Core and that Plaintiffs testified at trial that they had read these provisions and were therefore not relying on Tri-Core. This argument, however, ignores much of the other evidence presented at trial. First, it was up to the jury to make a determination as to whether the Plaintiffs' testimony as to who they did or did not rely on was credible. The materials Barrett gave to Plaintiffs were—at least in several instances—either authored by or provided by Tri-Core/Redfearn. Plaintiffs were aware that Tri-Core/Redfearn were the designers and would be the administrators of the life insurance/retirement plan they were considering investing in and therefore would be reasonably entitled to rely on their representations as to how the plan would function and be structured. The Court therefore believes that there was sufficient evidence for a

jury to reasonably find that Plaintiffs relied on Tri-Core/Redfearn's representations as to the potential tax consequences of their investment.

Finally, Plaintiffs argue that the Court's charge to the jury was flawed because the Court's instruction suggested that Tri-Core/Redfearn could be liable for "material omissions" as well as false statements of fact. (12/17/09 Tr. 29:3-8, 31:1-20.) In New Jersey, a party cannot be liable for a negligent misrepresentation based only on a material omission of fact unless they have a duty to disclose the information. *Karu v. Feldman*, 119 N.J. 135, 148 (1990). Here, Tri-Core/Redfearn had a duty to disclose known risks regarding the potential tax consequences of Plaintiffs' investment.[9] Tri-Core and Redfearn were the creators and designers of EPIC and held a unique position in their relationship with those who were considering investing in the plan. By virtue of their position as the primary experts on EPIC and as the providers of the majority of the information on EPIC, Tri-Core and Redfearn had a duty to provide accurate and complete knowledge as to EPIC's tax consequences to the best of their ability. *See Berry v. Playboy Enterprises, Inc.*, 195 N.J. Super. 520 (App. Div. 1984) (discussing how there may be duty to disclose based on course of dealings between parties); (12/8/09 Tr. 133:22-134:4, 141:15-22 (testimony of Plaintiffs' expert Culhane that Tri-Core and Redfearn would have had duty to disclose potential tax consequences)). Because Tri-Core/Redfearn had a duty to disclose, the instructions read to the jury were appropriate and provide no basis for the Court to grant a

---

[9]Due to the unique procedure history of this case and the fact that both Tri-Core and Redfearn were absent defendants, the Court did not have an appropriate opportunity to rule on this legal issue prior to the jury trial. In addition, determination of the issue required a consideration of the evidence presented at trial. However, the Court does not believe that its failure to issue an explicit ruling on this issue at an earlier point resulted in any prejudice to the parties as both sides made arguments at trial regarding the duty owed to Plaintiffs by the relevant parties and the jury did in fact find both Barrett and Tri-Core/Redfearn at fault.

motion for judgment notwithstanding the verdict.

## CONCLUSION

For the reasons stated above, and for good cause shown,

IT IS this 22nd day of September, 2010

ORDERED that Plaintiffs Jose M. Caria, Margit Gyantor, Lima Plastics, Kenneth Fisher, Frank Panico, Alloy Cast Products, Inc., Michael Maroney Sr., Michael Maroney Jr., and Universal Mailing Service, Inc.'s Motion for a New Trial [docket # 460] is DENIED.

*/s/ Anne E. Thompson*

ANNE E. THOMPSON, U.S.D.J.