NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

_____
:
NATIONAL SECURITY SYSTEMS, INC., :
et al. :
:
    Plaintiff,    :   Civil No. 00-6293 (AET)
:
    V    :   **OPINION & ORDER**
:
Robert L. IOLA, Jr., et al., :
:
    Defendants. :
_____:

THOMPSON, U.S.D.J.

    This matter has come before the Court upon Plaintiffs Jose M. Caria, Margit Gyantor, Lima Plastics (collectively, "Lima Plastics Plaintiffs"), Kenneth Fisher, Frank Panico, Alloy Cast Products, Inc. (collectively, "Alloy Cast Plaintiffs"), Michael Maroney Sr., Michael Maroney Jr., Universal Mailing Service, Inc. (collectively, "Universal Mailing Plaintiffs"), Daniel Dameo, Rocque Dameo, Finderne Management Company, Inc. (collectively, "Finderne Plaintiffs") Motion to Alter Judgment [docket # 459] and Defendant Jim Barrett's ("Barrett") Motion to Alter or Amend Judgment [458]. The Court has decided the motions upon the submissions of both parties, without oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons given below, Plaintiffs' Motion to Alter Judgment is granted in part and denied in part and Defendant's Motion

–1–

to Alter or Amend Judgment is granted in part and denied in part.

## BACKGROUND

The Court assumes that all parties are familiar with the factual and procedural background of this matter. To provide a quick summary of the events relevant to this motion, the Alloy Cast, Lima Plastics, and Universal Mailing Plaintiffs' civil RICO and common-law breach of fiduciary duty claims were tried to a jury, while all of the Plaintiffs' ERISA claims were tried to the bench in an eleven-day trial.[1] On Dec. 16, 2009, the jury rendered its verdict, finding that Barrett had not violated RICO, but that he had a common-law fiduciary relationship with Plaintiffs and that he breached his fiduciary duties. Based on this breach, the jury awarded damages in the amounts of $128,925 to the Alloy Cast Plaintiffs, $133,415 to the Lima Plastics Plaintiffs, and $176,643 to the Universal Mailing Plaintiffs. On Dec. 17, 2009, the jury apportioned liability under New Jersey's comparative negligence statute between Barrett and absent defendants Tri-Core, Inc. ("Tri-Core"), Ronn Redfearn ("Redfearn"), and Monumental Insurance Company.[2] The jury assigned 50% of the fault to Barrett and 50% to Tri-Core/Redfearn.

The Court heard additional oral argument on Plaintiffs' ERISA claims on March 22, 2010. On June 16, 2010, the Court read its opinion on the ERISA claims ("ERISA Opinion" [454]) into

---

[1] The Finderne Plaintiffs did not bring a civil RICO or common-law fiduciary duty claim as they had already tried those matters in state court. Another group of plaintiffs, referred to as the "National Security Plaintiffs" settled all of their claims prior to trial.

[2] Tri-Core and Redfearn were absent because Redfearn passed away in 2004 and Tri-Core filed a Chapter 7 bankruptcy petition in 2005. Tri-Core and Redfearn will hereinafter be referred to jointly as Tri-Core/Redfearn, consist with the parties' stipulation at trial that they be treated as one party. (Tr. 12/17/09 14:9-12.)

the record, finding that Barrett is liable pursuant to Section 406(b)(3) of ERISA because Tri-Core breached its fiduciary duties under that provision and Barrett knowingly participated in Tri-Core's actions. The Court ordered the equitable disgorgement of one-half of the commissions Barrett had received as compensation for selling insurance policies to Plaintiffs' ERISA-governed plans and found that pre-judgment interest on the disgorged commissions was warranted but denied Plaintiffs' request for attorneys' fees.

On June 18, 2010, the Court entered the Final Judgment [453] against Barrett in favor of the Alloy Cast Plaintiffs for the sum of $140,792.25, the Finderne Plaintiffs for the sum of $29,114.72, the Lima Plastics Plaintiffs for the sum of $148,648.95, and the Universal Mailing Plaintiffs for the sum of $117,780.21. These sums reflected the jury's damage award as adjusted for the apportionment of liability between Barrett and Tri-Core/Redfearn, the commissions to be disgorged, and pre-judgment interest on those commissions. Both Defendant Barrett and Plaintiffs have now moved to alter or amend the judgment on a number of grounds, which are addressed below.

## ANALYSIS

A court may, after a non-jury trial and upon motion by a party, correct any errors of law, mistakes of fact or oversights in its findings of fact or conclusions of law. Fed. R. Civ. P. 52(b); *U. S. Gypsum Co. v. Schiavo Bros., Inc.*, 668 F.2d 172, 180 (3d Cir. 1981). Similarly, a court may alter or amend a judgment in a non-jury case in order to account for an intervening change in

–3–

controlling law, new, previously undiscovered evidence, or the need to prevent manifest injustice. Fed. R. Civ. P. 59(e); *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).

**I.      Barrett's Motion to Alter or Amend the Judgment**

Barrett contends that the Court should alter or amend its judgment because at least two of the groups of Plaintiffs claims are barred by the relevant statute of limitations, because the Court allegedly incorrectly found that there was self-dealing on the part of Tri-Core, because Tri-Core and Barrett were entitled to receive reasonable compensation in the form of commissions, and because Barrett did not know that any of Tri-Core's actions violated their fiduciary duties.  For the reasons discussed below, the Court will grant Barrett's motion in part as to the applicability of the statute of limitations to the Universal Mailing and Alloy Cast Plaintiffs claims and will deny Barrett's motion on all other grounds.

　　　　1.　　　The Universal Mailing and Alloy Cast Plaintiffs' ERISA Claims Are Time-Barred

Barrett argues that the Court should alter its judgment because the ERISA claims of at least the Universal Mailing and Alloy Cast Plaintiffs are time-barred under ERISA's statute of limitations.  Barrett's argument is based on certain disclosure statements in which Kenneth Fisher of Universal Mailing and Michael Maroney of Alloy Cast acknowledged that they understood that Tri-Core would receive a commission on the purchase of life insurance contracts

–4–

from insurance companies for their ERISA plans.[3] (Opinion Tr. 13:14-18); Ex. D-48; Ex. D-56; Ex. D-849; Ex. P-14.  These disclosure statements were signed and acknowledged on the same date that Michael Maroney and Kenneth Fisher signed the adoption agreements and plan documents by which they created EPIC plans for their respective companies—October 1, 1990 and December 1, 1990, respectively.  Barrett contends that these documents show that those two groups of Plaintiffs had actual knowledge of Tri-Core's breach of fiduciary duty at that time and that their claims are therefore time-barred.

Actions for breach of fiduciary duty under ERISA must be commenced within the earlier of:

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.

29 U.S.C.A. § 1113.  "Actual knowledge" requires plaintiffs to have known not only of the events which constituted the breach of fiduciary duty but also "all relevant facts sufficient to give the plaintiff knowledge that a fiduciary duty has been breached or ERISA provision violated." *Cetel v. Kirwan Financial Group, Inc.*, 460 F.3d 494, 511 (3d Cir. 2006) (quoting *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1178 (3d Cir. 1992)).

---

[3] The Finderne and Lima Plastics Plaintiffs may also have received and acknowledged identical disclosure statements.  However, those documents were not found.  (Barrett's Mot. to Amend 14 n.2.)  The Court therefore

Here, Barrett's liability under ERISA is premised on his knowing participation in Tri-Core's receipt of commissions from the insurance companies, which the Court found to be a per se breach of fiduciary duty under § 1106(b)(3).[4]  (ERISA Opinion Tr. 25:5-26:18.)  The evidence referred to above makes clear that at least the Universal Mailing and the Alloy Cast Plaintiffs knew that Tri-Core would be receiving commissions from the insurance companies on the purchase of life insurance contracts for Plaintiffs' ERISA plans.  Further, in the plan documents, the Universal Mailing and Alloy Cast Plaintiffs assigned to Tri-Core the majority of their responsibilities as plan administrators, making Tri-Core a fiduciary of their ERISA plans. (Id. 10:16-11:2; 18:15-20.)  Thus, the Universal Mailing and the Alloy Cast Plaintiffs knew all of the relevant facts—that Tri-Core was a fiduciary of their plans, that Tri-Core was receiving commissions for its own account, and that those commissions were being received in connection with the purchase of the life insurance policies that would fund their plans—as of the date they read and acknowledged the disclosure statements.  The Universal Mailing and Alloy Cast Plaintiffs' claims that Tri-Core violated § 1106(b)(3) by receiving commissions should therefore have been time-barred because they filed their complaints more than three years after reading the disclosure statements.  The Universal Mailing and Alloy Cast Plaintiffs' claims against Barrett

---

will not alter this aspect of its judgment regarding the Finderne and Lima Plastics Plaintiffs.

[4] Section 1106(b)(3) prohibits a fiduciary from receiving any compensation for its own personal account from any party dealing with the plan in connection with a transaction involving plan assets.  29 U.S.C. § 1106(b)(3).  The Court's finding that Tri-Core violated § 1106(b)(3) was premised on its finding that the insurance policies in question were plan assets, that the insurance companies and Tri-Core participated in transactions involving the insurance policies, and that Tri-Core received commissions from the insurance companies in connection with those

that are premised only on his knowing participation in Tri-Core's violation of § 1106(b)(3) are time-barred under the same reasoning.

Plaintiffs contend that Barrett cannot raise this argument because the Court has already denied a motion for partial summary judgment by Barrett based upon the statute of limitations and because Barrett failed to list the statute of limitations as a legal issue for trial in the Final Pretrial Order [333]. First, the Court's prior order on the motion for partial summary judgment does not foreclose this issue because it focused on Plaintiffs' argument that excessive commissions had been improperly extracted from a "reserve fund" without Plaintiffs' knowledge or approval, not the proposition that the receipt of any commissions would be a breach of Tri-Core's fiduciary obligations.[5] (Sep. 24, 2007 Order 6-8 [266].) Second, Barrett has not waived his statute of limitations argument. Barrett reserved the right to join in the legal issues presented by other defendants in the Final Pretrial Order, and other defendants asserted statute of limitations defenses. (Final Pretrial Order 30, 39.) In addition, Barrett clearly laid out the fact that he thought he still had a valid statute of limitations argument in his pretrial proposed findings of fact. (Barrett's Pre-trial Proposed Findings of Fact 23-25 [370].)

---

transactions. (ERISA Opinion Tr. 25:5-26:18.)

[5] Plaintiffs' theory of the case appears to have shifted several times as this matter proceeded. At the time of Barrett's partial summary judgment motion, Plaintiffs argued that Barrett and Tri-Core had improperly extracted commissions from a reserve fund linked to Plaintiffs' ERISA plans. (Sep. 24, 2007 Order 6.) Plaintiffs now suggest that they alleged only that Barrett and the other Defendants falsely misrepresented the existence of such a fund. (Pls.' Mot. to Amend 31.) Plaintiffs also argued at trial that the amount of commissions Barrett received was excessive and that he violated ERISA by not disclosing the fact that he would be receiving commissions. The Court had not previously had the opportunity to consider in full the statute-of-limitations implications of all the evidence

The Court finds that it had overlooked the evidence presented at trial that the Universal Mailing and Alloy Cast Plaintiffs had actual knowledge of Tri-Core's receipt of commissions as early as 1990 and 1991 and that any claims based solely upon Tri-Core's receipt of commissions should therefore have been time-barred.  The Court believes that allowing the judgment to stand in its current form would result in manifest injustice and will therefore amend its judgment to enter judgment in favor of Barrett on the Universal Mailing and Alloy Cast Plaintiffs' ERISA claims.[6]

2.      Barrett Knowingly Participated in Tri-Core's Violation of ERISA

Barrett also contends that he cannot be liable under *Harris Trust* because he did not know that Tri-Core's receipt of commissions was a violation of ERISA.  The Supreme Court in *Harris Trust* held that a non-fiduciary could be held liable for a fiduciary's violation of ERISA when the non-fiduciary knew or should have known of the circumstances and facts that rendered the transaction a breach of fiduciary duty.  *Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).  That standard is satisfied here.  Barrett knew that Tri-Core was the administrator and a fiduciary of Plaintiffs' ERISA plans and that Tri-Core was receiving commissions for its own personal account in connection with the purchase of insurance policies to fund the plans.  Thus, Barrett knew of and knowingly participated in all of the relevant events

---

presented at trial as applied to all of these different theories of liability.

[6] The Court's decision on this issue means that Plaintiffs' argument that the Court's calculation of Barrett's estimated commissions received in relation to the Universal Mailing Plaintiffs' ERISA plan is moot.  The Court

and circumstances that made Tri-Core's actions an instance of self-dealing prohibited by § 1106(b)(3).[7]

### 3. Plaintiffs' Selection of the Insurance Product Does Not Insulate Barrett

Barrett's motion re-raises a number of arguments that were discussed at length in the pre- and post-trial briefs and during oral argument and which have already been fully considered and rejected by the Court. Barrett has not presented any new evidence, changes in the controlling law, or issues of fact or law that the Court overlooked which would result in manifest injustice that are relevant to those arguments. The following are therefore not grounds on which a court would grant a motion for reconsideration. *North River*, 52 F.3d at 1218. However, the Court will briefly address why it believes that amendment of the judgment on these grounds is not warranted.

First, Barrett argues that the Court should amend its judgment to find in his favor on all ERISA claims because Plaintiffs selected the insurance policies which would fund their plans, which leads him to the conclusion that Tri-Core did not engage in self-dealing by receiving commissions on the insurance products purchased for the plans it administered. Barrett's argument relies almost exclusively on the Court's prior opinion in *Faulman v. Security Mut. Fin.*

---

therefore will not address that section of their motion.

[7] Barrett cites two cases which he suggests supports the proposition that "knowing participation" requires actual or constructive knowledge that conduct was prohibited. The first, *Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993) focused on whether money damages were available under Section 502(a)(3) of ERISA rather than the standard under which a non-fiduciary may be held liable. The other case, *Marks v. Independence Blue Cross*, 71 F. Supp. 2d 432 (E.D. Pa. 1999), never even uses the phrase "knowing participation" and discuses only fiduciary liability under §

*Life Ins. Co.*, No. 3:04-CV-5083 (D.N.J. June 6, 2008), *aff'd*, 353 F. App'x. 699 (3d Cir. 2009). However, the situation in this case is clearly distinguishable from *Faulman*. The Court found in *Faulman* that the plaintiffs were the ones that made the decision to purchase the defendant's insurance product and that the insurance company therefore did not engage in self-dealing when it sold its insurance product to plaintiffs. The Court also found in *Faulman* that funds placed into the insurance company's general asset account were not plan assets and therefore the insurance companies' payment of commissions out of those accounts could not be a breach of fiduciary duty. Here, Tri-Core's fiduciary rule as the administrator of the plan is vastly different from that of an insurance company selling a product to the plans. In addition, Tri-Core's breach of fiduciary duty was the receipt rather than the payment of commissions.

### 4. Barrett's Right to Receive Reasonable Compensation Is Not a Valid Defense

Second, Barrett insists that because he was only a party-in-interest, he was permitted to receive reasonable compensation for services rendered for the plan and that therefore there was nothing improper with his receipt of commissions. While parties-in-interest are allowed to receive reasonable compensation for services to a plan, they are not allowed to knowingly participate in a fiduciary's breach of its duties. *Harris Trust*, 530 U.S. at 251. Barrett's liability was based on his knowing participation in Tri-Core's *per se* breach of fiduciary duty under § 1106(b)(3), not simply his receipt of remuneration for his services. The Court took into account

---

1106(a) and § 1108 as opposed to § 1106(b).

the fact that Barrett was entitled to receive some compensation when it limited his disgorgement of commissions to one-half of the amount he received.   (ERISA Opinion Tr. 27:23-28:18.)

> 5. Fiduciaries Cannot Receive Reasonable Compensation on § 1106(b) Prohibited Transactions

Finally, Barrett argues that fiduciaries are entitled to receive reasonable compensation under § 1108(c)(2) and therefore it was not a *per se* violation for Tri-Core to receive commissions in connection with the purchase of the insurance policies.   While fiduciaries are typically allowed to receive reasonable compensation for services rendered to a plan, there are certain transactions prohibited by ERISA which are *per se* violations.   One of these is the receipt by a fiduciary of personal compensation in relation to a transaction involving plan assets.   42 U.S.C. § 1106(b)(3). Several other courts have discussed in depth how § 1108(c)(2)'s provision allowing fiduciaries to receive reasonable compensation does not apply to the transactions prohibited by § 1106(b). *Patelco Credit Union v. Sahni*, 262 F.3d 897, 910 (9th Cir. 2001); *Gilliams v. Edwards*, 492 F. Supp. 1255, 1262 (D.N.J. 1980.); *Tibble v. Edison Intern*, 639 F. Supp. 2d 1074, 1088 (C.D. Cal. 2009); *but see Harley v. Minnesota Min. and Mfg. Co.*, 284 F.3d 901, 908-09 (8th Cir. 2002). Although the opinion in *Harley* suggests that there may be a circuit split on this issue, the Court finds the analysis in *Patelco* and *Gilliam*, which relies on the Department of Labor's regulation interpreting § 1108(c)(2), 29 C.F.R. § 2550.408c-2(a), more convincing.   Further, the Court believes that Barrett's attempt to distinguish *Gilliam* and *Patelco* on their facts as cases in which

the fiduciaries established their own compensation is unavailing as neither court indicated in any way that its understanding of the reach of § 1108(c)(2) was limited to those circumstances. *See Patelco*, 262 F.3d at 910; *Gilliams*, 492 F. Supp. at 1262.

## II.    Plaintiffs' Motion to Alter the Judgment

Plaintiffs have requested that the Court alter its judgment to correct two clerical errors, to include pre-judgment interest on the amount awarded by the jury on the common-law breach of fiduciary claims, and to account for their position that the full amount of the commissions received by Barrett should have been disgorged and that they should have received attorneys' fees under ERISA.    For the reasons given below, the Court will grant Plaintiffs' motion as to the clerical errors and the inclusion of pre-judgment interest and will deny it on the other grounds presented.

### 1.    Clerical Errors

Plaintiffs have brought to the Court's attention two clerical errors in the Final Judgment. First, the caption of the Final Judgment lists the lead plaintiff as "National Securities, Inc." rather than "National Security Systems, Inc."    Second, the Final Judgment states that judgment must be entered against Defendant Barrett on the civil RICO claims rather than the common-law breach of fiduciary duty claims.    Barrett does not oppose these suggested corrections and the Court will amend the Final Judgment to correct those clerical errors.

### 2.    Prejudgment Interest is Appropriate on the Damages Awarded by the Jury

Plaintiffs also have pointed out that the Court failed to include pre-judgment interest on the amounts awarded by the jury in the Final Judgment. Under New Jersey law, Plaintiffs are entitled to pre-judgment interest calculated from the date of the institution of the action. N.J. Ct. R. 4:42-11(b). The Alloy Cast Plaintiffs' complaint was initially filed in state court on February 28, 1999. (Pls.' Mot to Amend, Fram Decl., Ex. H.) The Lima Plastics and Universal Mailing Plaintiffs filed their Complaint [1] in this Court on December 29, 2000. The parties have agreed on the relevant pre-judgment interest figures, which are as follows: $42,519.47 for the Alloy Cast Plaintiffs; $35,121.50 for the Lima Plastics Plaintiffs; and $46,501.27 for the Universal Mailing Plaintiffs. (Opp. to Pls.' Mot to Amend 4 [466]; Pls.' Reply on Mot to Amend 6 [470].) The Court will amend the Final Judgment to include these sums.

3. Attorney's Fees Are Not Merited

Plaintiffs suggest that the Court must reconsider its decision not to award them attorneys' fees in light of the Supreme Court's recent ruling in *Hardt v. Reliance Standard Life Insurance Co.*, 130 S.Ct. 2149 (2010).[8] In *Hardt*, the Supreme Court held that a party need only show "some degree of success on the merits" as opposed to being a "prevailing party" in order for a court to award attorney's fees under § 1132(g)(1). Section 1132(g)(1) provides that "a reasonable attorney's fee and costs" may be awarded "to either party" at the court's "discretion."

---

[8] *Hardt* was decided on May 24, 2010, before the Court read its ERISA Opinion into the record but after the parties had submitted their post-trial proposed findings of fact and after oral argument on the ERISA claims was completed. The Court thus believes that *Hardt* should

29 U.S.C. § 1132(g)(1).

The Supreme Court's decision in *Hardt* has no relevance to the Court's decision not to award Plaintiffs attorneys' fees. The Court denied Plaintiffs' request for attorneys' fees not because Plaintiffs were not a prevailing party but rather because after evaluating the five factors identified in *Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir. 1983), the Court determined that an award of attorneys' fees was not warranted. In *Hardt*, the Supreme Court recognized that the determination of whether a party had shown "some degree of success on the merits" was only the first step in the required analysis and that a court may consider factors such as those identified in *Ursic* once a claimant has satisfied that initial requirement. 130 S.Ct. at 2158 n.8. The Court thus believes its reliance on the five factors laid out in *Ursic* was appropriate.

Plaintiffs have also identified a number of reasons why they disagree with the outcome of the Court's analysis using the *Ursic* factors. These are simply a rehashing of the arguments already raised in their post-trial briefs and at oral argument. The Court therefore sees no reason to reconsider its evaluation of the five *Ursic* factors or its decision not to award Plaintiffs attorneys' fees.

    4.    <u>Barrett was Ordered to Disgorge an Appropriate Percentage of His Commissions</u>

Plaintiffs appear to have attempted to use their Motion to Amend the Judgment as an opportunity to re-raise two other arguments that they have already presented and which the Court

---

properly be treated as a decision which may reflect a change in controlling law.

had fully considered prior to entering its ERISA Opinion and Final Judgment.   Specifically, Plaintiffs argue that Barrett should be ordered to disgorge all of the commissions he received and that a higher pre-judgment interest rate should have been applied.   Because Plaintiffs have not presented any new, previously unavailable evidence, change in controlling law, or errors of fact or law that the Court had overlooked and which would result in a manifest injustice, The Court will not reconsider its judgment based on either of those two arguments.   As above, the Court will briefly lay out the reasoning why it believes amending the judgment on these grounds is not warranted.

First, Plaintiffs argue that it was inappropriate for the Court to order that Barrett disgorge only one-half of the commissions he received.   Plaintiffs contend that Barrett must be ordered to disgorge the full amount of the commissions.   The Court, however, does not believe that the cases presented by Plaintiffs necessitate drawing that conclusion.   Section 1132(a)(3) gives a court the power to award "appropriate equitable relief" for a violation of ERISA.[9]   What constitutes "appropriate equitable relief" is largely left to the determination of the court.

The Court found that Plaintiffs had obtained all the benefits they were entitled to under the ERISA plans and that Plaintiffs' plans had not suffered any losses for which they needed to be recompensed.   (ERISA Opinion Tr. 30:16-24.)   Tri-Core's receipt of commissions was a classic

---

[9] Plaintiffs cite to § 1109 as the standard for what relief can be awarded.   However, § 1109 provides the remedy for a breach of § 1132(a)(2), not 1132(a)(3).   Section 1109 explicitly states that the remedies it provides are available only against fiduciaries of an ERISA plan.   29 U.S.C.A. § 1109.

example of self-dealing but this action did not put it in possession of amounts which should have gone into Plaintiffs' plans, nor did the payment of commissions deprive Plaintiffs' plans of any future profits.  (*Id.*)   Therefore the Court believed appropriate equitable relief was limited to disgorgement of commissions received as a result of the breach of fiduciary duty.  (*Id.* at 26:21-27:15.)   The Court thus found that Barrett must be required to disgorge at least some of the commissions he received due to his knowing participation in Tri-Core's self-dealing practices. However, because it also believed that Barrett would normally have been entitled to receive reasonable compensation for his services, the Court only ordered the disgorgement of one-half of the commissions received.  (*Id.* at 27:16-28:18.)   The Court believes that the commissions it ordered to be disgorged were sufficiently traceable back to the moneys improperly received by Tri-Core such that disgorgement is appropriate.

        5.       The Pre-Judgment Interest Rate Applied to the Commissions was Appropriate

Second, Plaintiffs have re-raised their argument that pre-judgment interest should have been calculated at a rate of 8.25% because that reflects the rate Plaintiffs' could have expected to make if they had invested in a typical retirement plan.   Although the primary purpose of pre-judgment interest is typically to make the plaintiff whole, one of the other purposes of prejudgment interest is to prevent the unjust enrichment of the defendant.   *Fotta v. Trustees of United Mine Workers of America, Health & Retirement Fund of 1974,* 165 F.3d 209, 212 (3d Cir. 1998) (quoting *Short v. Central States, Se. & Se. Areas Pension Fund,* 729 F.2d 567, 576 (8th Cir.

1984)) ("To allow the Fund to retain the interest it earned on funds wrongfully withheld would be to approve of unjust enrichment."). Although the Court does not disagree with Plaintiffs' assertion that their primary purpose for investing in the plans was to save for retirement, the Court previously found that the commissions were not delayed or withheld benefits or amounts that reduced the benefits Plaintiffs could expect to receive under the plans. (ERISA Opinion Tr. 30:16-24.)[10] Thus prejudgment interest in this matter does not directly serve the purpose of making Plaintiffs whole. Since the only purpose of prejudgment interest in this matter is to prevent the unjust enrichment of Barrett, prejudgment interest at the rates established for post judgment interest in 28 U.S.C. § 1961 is appropriate.[11] As Plaintiffs admit, the Third Circuit has held that an award of prejudgment interest at the rates set in § 1961 is not an abuse of a district court's discretion. *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 133 (3d Cir. 2000.)

## CONCLUSION

For the reasons stated above, and for good cause shown,

---

[10] Plaintiffs state that is it "undisputed that that the funds were wrongfully diverted by Tri-Core and Barrett from the ERISA plans in this case [which] were intended to provide retirement savings for the individual Plaintiffs." However, the Court explicitly found that the commissions were not wrongfully diverted or misappropriated in its ERISA Opinion. (ERISA Opinion Tr. 21:6-33:21.)

[11] Barrett contends in his opposition that no prejudgment interest is warranted because he did not act "wrongfully" and because he has not been unjustly enriched. However, Barrett acted wrongfully under the law of ERISA as interpreted by *Harris Trust* by knowingly participating in Tri-Core's breach of fiduciary duty. The commissions Barrett received came out of the funds Tri-Core obtained through its self-dealing. Thus, the Court believes Barrett can appropriately be considered to have been unjustly enriched from his participation in Tri-Core's actions.

IT IS this 24th day of September, 2010

ORDERED that Defendant Barrett's Motion to Amend or Alter Judgment [458] is GRANTED IN PART and DENIED IN PART in accord with the above Opinion; and it is

ORDERED that Plaintiffs' Motion to Amend Judgment [459] is GRANTED IN PART and DENIED IN PART in accord with the above Opinion.

       /s/ Anne E. Thompson_____

ANNE E. THOMPSON, U.S.D.J.