NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATIONAL SECURITY SYSTEMS, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Robert L. IOLA, Jr., et al.,<br><br>Defendants. | Civ. No. 00-6293<br><br>OPINION |

THOMPSON, U.S.D.J.

## I. INTRODUCTION

This matter has come before the Court upon the Motion to Stay the Trial filed by Defendant James W. Barrett ("Barrett"), (Docket Entry No. 510), and the Cross-Motion to Certify the Amended Final Judgment filed by Plaintiffs, (Docket Entry No. 516). Plaintiffs oppose the Motion to Stay the Trial, (Docket Entry No. 515), and Barrett opposes the Cross-Motion to Certify the Amended Final Judgment, (Docket Entry No. 519). The Court has decided these matters upon consideration of the parties' written submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons given below, Barrett's Motion to Stay the Trial is denied and Plaintiffs' Cross-Motion to Certify the Amended Final Judgment is denied without prejudice.

## II. BACKGROUND

This case involves an employee benefit plan known as the Employers Participating Insurance Cooperative ("the EPIC Plan") that was created to take advantage of favorable tax treatment under Section 419(f)(b) of the Internal Revenue Code. The EPIC Plan offered two

1

benefits: (1) a death benefit; and (2) a state-mandated conversion privilege that permitted covered employees to convert their coverage to individual policies upon retirement or termination of employment. Additionally, contributions to the EPIC Plan were, under certain circumstances, tax deductible to the participating employer. During audits of various participating employers, however, the IRS determined that contributions to the EPIC Plan were not tax deductible and disallowed such deductions. All three of the groups of plaintiffs with remaining jury claims had such deductions disallowed by the IRS.

### A. *Filing of Complaint*

The disallowance of those deductions by the IRS prompted Plaintiffs to initiate this lawsuit on December 29, 2000, against various parties whom Plaintiffs believed had some role in the creation, marketing, and administration of the EPIC Plan. (Docket Entry No. 1). With regards to Barrett,[1] Plaintiffs brought a number of claims for certain misrepresentations he allegedly made concerning the EPIC Plan. (*Id*.). Specifically, they asserted (1) a claim under ERISA § 502(a)(2) and (a)(3) for violations of the duties imposed by ERISA §§ 404, 405, and 406; (2) five civil RICO claims under 18 U.S.C. § 1964(c); and (3) nine state statutory and common law claims, including breach of fiduciary duty. (*Id*.). Plaintiffs claimed that Defendants Barrett and Tri-Core induced Plaintiffs to participate in the EPIC Plan (1) to generate grossly excessive compensation for themselves; (2) by concealing the commissions they would receive; (3) by misrepresenting the tax benefits and drawbacks of the plan; and (4) by misrepresenting the existence of a reserve fund and the accessibility of conversion credits.

In February 2007, the parties filed cross-motions for partial summary judgment. (Docket Entry Nos. 211, 214-18). Barrett first argued that Plaintiffs' state law claims were pre-empted by

---

[1] As Barrett is the only remaining defendant, the Court declines to summarize those claims against the other Defendants that have already been resolved.

ERISA § 514(a). The Court held that the state law claims concerning alleged misrepresentations made prior to the establishment of the EPIC Plan were not pre-empted because such misrepresentations did not "relate to" existing plans. (Docket Entry No. 266 at 9-11). As such, Plaintiffs were permitted to argue that Barrett violated state law by making alleged misrepresentations concerning the EPIC Plan's tax benefits. (*Id.*). The Court granted summary judgment, however, to the extent Plaintiffs' state law claims involved Barrett's alleged misrepresentations about conversion credits and commissions as those claims "related to" alleged misconduct in the administration of the plans and were, therefore, preempted by ERISA. (*Id.*).

The Court also addressed certain arguments concerning Plaintiffs' ERISA claims. First, the Court held that Barrett's status as a non-fiduciary did not preclude liability under § 502(a)(3) because that provision permits claims for equitable relief against those who knowingly participate in a fiduciary's breach of fiduciary duty under ERISA. (*Id.* at 4-6). Additionally, the Court held that Barrett's ERISA claims were not barred by the statute of limitations because there was no evidence concerning when Plaintiffs became aware of Tri-Core's commissions. (*Id.* at 6-8). Finding issues of material fact in dispute, the Court denied Plaintiffs' motion for summary judgment on the § 502(a)(3) claim. (*Id.*). The Court then bifurcated the remaining claims into those that would be decided by a jury (the RICO and state law claims) and those that would be decided by the Court in a bench trial (the ERISA claims).

B. *Jury Trial*

In 2010, a jury trial was held on Plaintiffs' RICO and state law claims. Consistent with the Court's ruling on preemption, Plaintiffs' state law claims concerned only Barrett's alleged pre-plan misrepresentations about the EPIC Plan's tax benefits. Additionally, the Court

instructed the jury not to consider evidence pertaining to Tri-Core and Barrett's commissions in their deliberations on the RICO claim. (Docket Entry No. 511, Attach. 3 at ¶ 42). Plaintiffs also argued they were entitled to damages for (1) the contributions made by Plaintiffs to the EPIC Plan; and (2) the tax-based losses they suffered as a result of the disallowance of deductions. (*Id*. at ¶ 41).

The jury returned a verdict for Barrett on the RICO claim and for Plaintiffs on the state common law claim for breach of fiduciary duty. (*Id*. at ¶ 43). They awarded Plaintiffs damages for the losses they incurred as a result of the IRS audit but declined to award damages for any contributions made by Plaintiffs to the EPIC Plan. (*Id*.). The jury also allocated one-half of the fault to Redfearn and Tri-Core and the remaining one-half fault to Barrett. (*Id*. at ¶ 44).

C. Bench Trial

The Court later issued findings of fact and conclusions of law with respect to the ERISA claims. The Court reiterated that Barrett was not a fiduciary pursuant to ERISA but that Tri-Core and Redfearn were fiduciaries. The Court held that Tri-Core did not breach its fiduciary duty pursuant to §§ 404 or 406(b)(1), but did violate the self-dealing provision of ERISA because the commission received from Defendant Commonwealth Life Insurance Company ("Commonwealth") was an improper incentive to promote Commonwealth's policies to its clients. The Court also found that Barrett knowingly participated in Tri-Core's violation of ERISA and, therefore, was liable under ERISA's equitable relief provision, § 502(a)(3). The Court also determined that disgorgement of one-half of the commissions Barrett received in connection with the promotion and sale of the EPIC Plan was the appropriate equitable remedy.

*D. Post-Trial Motions*

Both parties moved to amend the judgment. (Docket Entry Nos. 458, 459). The Court then reversed its ruling regarding the timeliness of the Alloy Cast and Universal Mailing Plaintiffs' ERISA claims, holding that the claims were time-barred in light of evidence establishing their awareness of Tri-Core's § 406(b)(3) violation. (Docket Entry No. 475).

*E. Third Circuit Appeal*

Both parties appealed to the U.S. Court of Appeals for the Third Circuit. (Docket Entry Nos. 478, 480). First, the Third Circuit affirmed the Court's judgment in all respects but three. (Docket Entry No. 492). First, the Third Circuit revived Plaintiffs' state law claims to the extent that Barrett misrepresented the existence of a reserve fund, the availability of conversion credits, and the nature of his commissions prior to the creation of the EPIC Plan. In doing so, the Third Circuit directed the Court to "consider other arguments pressed by the parties in dispositive motions or consider, among other issues, whether retrial on those claims would result in double recovery for a single injury." *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 85 (3d Cir. 2012). Second, the Third Circuit determined that the jury should have had the opportunity to consider the alleged concealment of commissions as a predicate act for Plaintiffs' RICO claim. *Id*. at 106-107, 109. Last, the Third Circuit vacated the Court's partial grant of Barrett's motion to amend the judgment for further proceedings to the extent the Court held that the Alloy Cast and Universal Mailing Plaintiffs' ERISA claims were time-barred. *Id*. at 109.

*F. Post-Appeal Motions*

Barrett now seeks to stay the retrial for a period of 180 days. (Docket Entry No. 510, Attach. 1). Plaintiffs oppose the motion and request that the Court certify the Amended Final Judgment entered on September 24, 2010. (Docket Entry No. 516). A Supplemental Motion for

Partial Summary Judgment filed by Barrett is also pending before the Court.  (Docket Entry No. 511).

### III.  DISCUSSION

The Court first considers Barrett's Motion to Stay the Trial before turning to Plaintiffs' Cross-Motion to Certify the Amended Final Judgment.

   A.  *Motion to Stay the Trial*

Although Barrett initially requested "to stay the trial of this matter for a period of 180 days," (Docket Entry No. 510, Attach. 1 at 1), it appears that Barrett in fact seeks only to delay the trial date until January 2014.  (Docket Entry No. 519 at 2 (agreeing with Plaintiffs "that the trial date is the only part of the case which should by (sic) stayed")).  Plaintiffs agree that the Court "should simply adjourn the trial date to a date certain in January of 2014 without imposing a broad stay" but ask the Court to condition such an adjournment on Barrett "satisfying the outstanding final judgments imposed in the Amended Final Judgment rendered on September 24, 2010."  (Docket Entry No. 515 at 2-4).  As Barrett faces a number of personal hardships following Hurricane Sandy, the Court will schedule the trial to begin in January 2014.  The Court declines, however, to condition this relief on the satisfaction of any conditions sought by Plaintiffs.  Therefore, to the extent Barrett seeks a stay, his Motion to Stay the Trial is denied and the retrial is scheduled for January 2014.

   B.  *Cross-Motion to Certify the Amended Final Judgment*

Additionally, Plaintiffs ask the Court to certify the Amended Final Judgment issued on September 24, 2010.  (Docket Entry No. 515).  Under Rule 54(b),

> [w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

FED. R. CIV. P. 54(b). Certification under Rule 54(b) is within the sound discretion of the district court. *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980). Such requests need not be granted routinely and the party seeking certification bears the burden of demonstrating that certification is warranted. *Anthuis v. Colt Indus. Oper. Corp.*, 971 F.2d 999, 1003-04 (3d Cir. 1992). In deciding whether to certify a judgment, courts must first determine whether "it is dealing with a 'final judgment' . . . in the sense that it is 'an ultimate disposition of an individual claim entered in the course of multiple claims action.'" *Sussex Drug Prods. v. Kanasco, Ltd.*, 920 F.2d 1150, 1153 (3d Cir. 1990) (quoting *Curtiss-Wright*, 446 U.S. at 7). Then, the court must exercise its discretion to determine whether there is "any just reason for delay." *Curtiss-Wright*, 446 U.S. at 8.

After reviewing the parties' submissions, the Court concludes that Plaintiffs have not met their burden of showing that certification is warranted under Rule 54(b). Furthermore, it appears that a number of issues await resolution and certification of the Amended Final Judgment at this time may create the potential for inconsistent verdicts. As such, Plaintiffs' Cross-Motion to Certify the Judgment is denied without prejudice.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Stay the Trial is denied and Plaintiffs' Cross-Motion to Certify the Amended Final Judgment is denied without prejudice. An appropriate order will follow.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

Date:   September 17, 2013