UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATIONAL SECURITY SYSTEMS, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> Robert L. IOLA, Jr., et al., <br><br> Defendants. | Civ. No. 00-6293 <br><br><br> OPINION |

THOMPSON, U.S.D.J.

I. INTRODUCTION

This matter has come before the Court upon the Supplemental Motion for Partial Summary Judgment filed by Defendant James W. Barrett ("Barrett"). (Docket Entry No. 511). Plaintiffs oppose the motion. (Docket Entry No. 520). The Court has decided the matter upon consideration of the parties' written submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons given below, Barrett's Supplemental Motion for Partial Summary Judgment is granted in part and denied in part.

II. BACKGROUND

This case involves an employee benefit plan known as the Employers Participating Insurance Cooperative ("the EPIC Plan") that was created to take advantage of favorable tax treatment under Section 419(f)(b) of the Internal Revenue Code. The EPIC Plan offered two benefits: (1) a death benefit; and (2) a state-mandated conversion privilege that permitted covered employees to convert their coverage to individual policies upon retirement or termination of employment. Additionally, contributions to the EPIC Plan were, under certain

1

circumstances, tax deductible to the participating employer. During audits of various participating employers, however, the IRS concluded that contributions to the EPIC Plan were, in fact, not tax deductible and disallowed such deductions. All three of the groups of plaintiffs with remaining jury claims had such deductions disallowed by the IRS.

   A. *Initiation of Federal Action*

The disallowance of deductions by the IRS prompted Plaintiffs to initiate this lawsuit on December 29, 2000, against various parties whom Plaintiffs believed had some role in the creation, marketing, and administration of the EPIC Plan. (Docket Entry No. 1). With regards to Barrett,[1] Plaintiffs brought a number of claims for certain misrepresentations he allegedly made concerning the EPIC Plan. (*Id.*). Specifically, they asserted (1) a claim under ERISA § 502(a)(2) and (a)(3) for violations of the duties imposed by ERISA §§ 404, 405, and 406; (2) five civil RICO claims under 18 U.S.C. § 1964(c); and (3) nine state statutory and common law claims, including breach of fiduciary duty. (*Id.*). Plaintiffs claimed that Defendants Barrett and Tri-Core induced Plaintiffs to participate in the EPIC Plan by misrepresenting (1) the tax advantages of the EPIC Plan; (2) the accessibility of conversion credits; (3) the presence of a reserve fund; and (4) the nature of the commissions that Barrett and Tri-Core anticipated earning.

In February 2007, the parties filed cross-motions for partial summary judgment. (Docket Entry Nos. 211, 214-18). Barrett first argued that Plaintiffs' state law claims were preempted by ERISA § 514(a). The Court held that the state law claims concerning alleged misrepresentations made prior to the establishment of the individual ERISA plans under the EPIC Plan were not preempted because such misrepresentations did not "relate to" existing plans. (Docket Entry No. 266 at 9-11). Plaintiffs were permitted to only argue, therefore, that Barrett violated state law by

---

[1] As Barrett is the only remaining defendant, the Court declines to summarize those claims against the other Defendants that have already been resolved.

2

making misrepresentations about the EPIC Plan's tax benefits, and the Court granted summary judgment to the extent Plaintiffs' state law claims concerned misrepresentations about conversion credits, the existence of a reserve fund, and commissions. (*Id*.).

The Court also considered Plaintiffs' ERISA claims. First, the Court held that Barrett's status as a non-fiduciary did not preclude liability under § 502(a)(3) because that provision permits claims for equitable relief against those who knowingly participate in a fiduciary's breach of fiduciary duty under ERISA. (*Id*. at 4-6). Additionally, the Court held that the Alloy Cast and Universal Mailing Plaintiffs'[2] ERISA claims were not barred by the statute of limitations because there was no evidence concerning when Plaintiffs became aware of Tri-Core's commissions. (*Id*. at 6-8). As issues of material fact were, therefore, in dispute, the Court denied Plaintiffs' motion for summary judgment on the § 502(a)(3) claim. (*Id*.). The Court then bifurcated the remaining claims into those that would be decided by a jury (the RICO and state law claims) and those that would be decided by the Court in a bench trial (the ERISA claims).

B. *Jury Trial*

In 2010, Plaintiffs' RICO and state law claims were tried before a jury. Consistent with the Court's preemption ruling, Plaintiffs' state law claims concerned only misrepresentations about the EPIC Plan's tax benefits. Additionally, the Court instructed the jury not to consider evidence pertaining to Tri-Core and Barrett's commissions in their deliberations on the RICO claim. (Docket Entry No. 511, Attach. 3 at ¶ 42). Plaintiffs argued that they were entitled to damages for (1) Plaintiffs' contributions to the EPIC Plan; and (2) the tax-related losses they suffered as a result of the disallowance of deductions. (*Id*. at ¶ 41).

---

[2] The Alloy Cast and Universal Mailing Plaintiffs include Universal Mailing Service, Inc., Michael Maroney, Sr., Michael Maroney, Jr., Alloy Cast Products, Inc., Kenneth Fisher, and Frank Panico.

3

The jury returned a verdict for Barrett on the RICO claim and for Plaintiffs on the state common law claim for breach of fiduciary duty. (*Id*. at ¶ 43). They awarded Plaintiffs damages for the tax-related losses they incurred but declined to award damages for any contributions made by Plaintiffs to the EPIC Plan. (*Id*.). The jury also allocated one-half of the fault to Redfearn and Tri-Core and the remaining one-half fault to Barrett. (*Id*. at ¶ 44).

## C. Bench Trial

The Court later issued findings of fact and conclusions of law with respect to the ERISA claims. The Court reiterated that Barrett was not a fiduciary pursuant to ERISA but that Tri-Core and Redfearn were fiduciaries. The Court held that Tri-Core did not breach its fiduciary duty pursuant to §§ 404 or 406(b)(1), but did violate the self-dealing provision of ERISA because the commissions received from Defendant Commonwealth Life Insurance Company ("Commonwealth") were an improper incentive to promote Commonwealth's policies to its clients. The Court also found that Barrett knowingly participated in Tri-Core's violation of ERISA and, therefore, was liable under ERISA's equitable relief provision, § 502(a)(3). Finally, the Court determined that disgorgement of one-half of the commissions Barrett received in connection with the promotion and sale of the EPIC Plan was the appropriate equitable remedy.

## D. Post-Trial Motions

Both parties moved to amend the judgment. (Docket Entry Nos. 458, 459). The Court then reversed its ruling regarding the timeliness of the Alloy Cast and Universal Mailing Plaintiffs' ERISA claims, holding that the claims were time-barred in light of evidence establishing their awareness of Tri-Core's § 406(b)(3) violation. (Docket Entry No. 475).

4

E. *Third Circuit Appeal*

Both parties appealed to the U.S. Court of Appeals for the Third Circuit. (Docket Entry Nos. 478, 480). The Third Circuit affirmed the Court's judgment in all respects but three. *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65 (3d Cir. 2012). First, the Third Circuit revived Plaintiffs' state law claims to the extent they allege that Barrett misrepresented the existence of a reserve fund, the availability of conversion credits, and the nature of the commissions prior to the creation of the EPIC Plan. *Id*. at 85. In doing so, the Third Circuit noted that "[r]etrial may be necessary" but directed the Court to "consider other arguments pressed by the parties in dispositive motions or consider, among other issues, whether retrial on those claims would result in double recovery for a single injury." *Id*. Second, the Third Circuit determined that the jury should have had the opportunity to consider the alleged concealment of commissions in its assessment of Plaintiffs' RICO claim. *Id*. at 106-107, 109. Last, the Third Circuit vacated the Court's partial grant of Barrett's motion to amend the judgment to the extent the Court held that the Alloy Cast and Universal Mailing Plaintiffs' ERISA claims were time-barred, concluding that the proper inquiry was "when they acquired actual knowledge of Barrett's knowing participation in Tri-Core's breach of § 406(b)(3)." *Id*. at 109.

F. *Post-Appeal Motions*

On remand from the Third Circuit, Barrett filed a Supplemental Motion for Partial Summary Judgment, which Plaintiffs oppose. (Docket Entry Nos. 511, 520). The Court now considers the merits of Barrett's motion.

III. LEGAL STANDARD

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." FED. R. CIV. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248-49. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or defenses" before those issues come to trial. *Id.* at 323-24.

## IV. DISCUSSION

Barrett advances a number of arguments in favor of summary judgment on Plaintiffs' state law claims. Additionally, Barrett seeks to limit retrial of Plaintiffs' RICO claim to misrepresentations concerning commissions. Finally, Barrett asks the Court to defer decision on the timeliness of the Alloy Cast and Universal Mailing Plaintiffs' ERISA claims until after trial. The Court considers Barrett's arguments separately.

A. *State Law Claims*

Barrett argues that summary judgment is appropriate on Plaintiffs' state law claims to the extent they involve misrepresentations regarding commissions, the accessibility of conversion credits, and the presence of a reserve fund because (1) an award of damages for such claims would result in a double recovery for Plaintiffs; and (2) Plaintiffs cannot provide evidence to support each element of those claims. (Docket Entry No. 511, Attach. 2 at 7-21). As Plaintiffs have advised the Court that they do not intend to pursue their state law claims for breach of contract, breach of the duty of good faith and fair dealing, common law fraud, or conspiracy to aid and abet, the Court considers only those arguments raised by Barrett regarding Plaintiffs' breach of fiduciary duty claims. (*See* Docket Entry No. 520).

1. *Double Recovery*

Barrett first contends that summary judgment is appropriate because any additional recovery for breach of fiduciary duty would result in a double recovery for Plaintiffs. (Docket Enrty No. 511, Attach. 2 at 8-13). Barrett argues that by limiting the damage award for breach of fiduciary duty to the tax-related losses Plaintiffs suffered, the jury determined conclusively that the total damages suffered by Plaintiffs as a result of being induced to enroll in the EPIC Plan were Plaintiffs' tax-related losses. (*Id.*).

The Court, however, is not persuaded. Plaintiffs argued at trial that they were damaged by the misrepresentations regarding the EPIC Plan's tax benefits in the amount of (1) contributions to the EPIC Plan; and (2) tax-related losses. While the jury awarded only Plaintiffs' tax-related losses, the Court is not persuaded that when presented with evidence concerning additional alleged misrepresentations, a reasonable jury could not conclude that Plaintiffs suffered a broader range of damages. Furthermore, Plaintiffs concede that they are not

7

entitled to recover their tax-related losses under each theory of liability and that a second jury award that includes Plaintiffs' tax-related losses must, therefore, be offset or completely eliminated to preclude such a double recovery. (Docket Entry No. 520 at 7-9).

　　　　2. *Sufficiency of the Evidence*

Barrett next contends that summary judgment is appropriate on Plaintiffs' breach of fiduciary duty claim as the evidence is insufficient to support such a claim. (Docket Entry No. 511, Attach. 2 at 14-21). Specifically, Barrett argues that (1) the EPIC Plan's specifications and insurance policies contain no reference to a "reserve fund" and, therefore, no reasonable person could read the EPIC Plan's documents and determine that there was a reserve fund; (2) Plaintiffs did not rely upon any representation regarding a reserve fund; and (3) Plaintiffs cannot show that they suffered damages from the lack of reserve fund. (*Id*.).

Upon reviewing the parties' submissions, the Court is not persuaded that summary judgment is appropriate in this instance. The record shows that the EPIC Plan "called for establishment of a trust to hold and manage each plan's assets" and a "number of banks were designated trustees of EPIC [P]lans over the course of [its] operation." (Docket Entry No. 502, Attach. 2 at 7). In practice, however, "Tri-Core, not the trustees, directed the management of plan assets; the trustee operated only as a pass-through entity." (*Id*.). Additionally, Plaintiffs testified at trial that they would not have agreed to participate in the EPIC Plan if they had known that there was no reserve fund. (*See, e.g.,* Docket Entry Nos. 217, Attachs. 2-4; 219). Furthermore, the Court is not persuaded by Barrett's argument concerning damages. As previously discussed, the jury has not had an opportunity to decide the issue of damages flowing from misrepresentations concerning the absence of a reserve fund. The Court is simply not persuaded that Plaintiffs, who were permitted to argue at trial that they suffered damages in the

form of contributions as a result of misrepresentations concerning the EPIC Plan's tax benefits, should not be permitted to argue at retrial that those damages also resulted from misrepresentations concerning the reserve fund. Although Plaintiffs will bear the burden of proving these damages at retrial, the issue is one properly resolved by a jury. The Court, therefore, agrees with Plaintiffs that a genuine issue of material fact exists concerning the scope of Plaintiffs' damages. As such, Barrett's motion for summary judgment is denied to the extent he seeks to dismiss Plaintiff's state law claims for breach of fiduciary duty.

*B. RICO Claim*

Barrett next contends that the retrial of the RICO claim should be limited to the alleged concealment of commissions. (Docket Entry No. 511, Attach. 2 at 22-23). At trial, the jury was instructed to consider only the alleged misrepresentations about tax benefits, the reserve fund, and the accessibility of conversion credits for the purposes of Plaintiffs' RICO claim. The Court did not permit the jury to consider the generation of excessive commissions or the concealment of commissions as part of the scheme to defraud. The Third Circuit affirmed the trial court's judgment as to the generation of excessive commissions but reversed on the concealment of commissions. Barrett now asks the Court to limit the retrial of the RICO claim to the alleged concealment of commissions, rather than allow Plaintiffs to present evidence of each of the alleged misrepresentations.

In advancing this argument, however, Barrett relies on a strained reading of the Third Circuit's Opinion. According to Barrett, the Third Circuit instructed this Court to determine whether a full retrial of the RICO claim is necessary when it stated that it was unsure if "the instruction to ignore testimony on commissions infected the jury's consideration of the plaintiffs' other scheme-to defraud theories." *Nat'l Security Sys.*, 700 F.3d at 107. The Court, however,

9

does not agree with Barrett's interpretation. The Third Circuit stated that "[a]t a minimum . . . it is not highly probable that the instruction did not affect the plaintiffs' substantial rights" and "[w]e will therefore vacate the jury's verdict on the RICO claim and remand for retrial." *Id*. The Court reads the Opinion as an indication that a full retrial of the RICO claim is necessary and, finding no other support for Barrett's argument, the Court denies Barrett's motion to the extent he seeks to limit Plaintiffs' RICO claim to the concealment of commissions at retrial.

*C. ERISA Claims*

Finally, Barrett contends that the remaining ERISA issues should be handled after retrial to allow for factual development during retrial. (Docket Entry No. 511, Attach. 2 at 23). The Court agrees and, therefore, defers ruling on any arguments concerning the ERISA claims until after retrial. As such, Barrett's motion is granted to the extent he seeks to postpone decision on the ERISA claims until after retrial.

## IV. CONCLUSION

For the foregoing reasons, Barrett's Supplemental Motion for Partial Summary Judgment is granted in part and denied in part. An appropriate order will follow.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

Date: September 25, 2013